# COMMISSIONERS OF SANTA FÉ COUNTY *v.* TERRITORY OF NEW MEXICO EX REL. COLER.

## SAME *v.* SAME.

APPEALS FROM THE SUPREME COURT OF THE TERRITORY OF NEW MEXICO.

Nos. 42, 43. Submitted November 29, 1909.—Decided December 20, 1909.

Although a defense to the merits if pleaded in the original action might have prevented rendition of the judgment, it cannot be urged to prevent mandamus from issuing to enforce the judgment.

Under the laws of New Mexico, where there is no possible excuse for a board of county commissioners not to comply with a judgment, a peremptory writ of mandamus in the first instance is authorized.

Where the bill shows it is clearly the purpose of defendant officers not to perform a duty imposed upon them, demand is not necessary before suit for mandamus.

Where parts of a county have been detached by statute which provides for the detached portions bearing their proportion of indebtedness, the counties to which those portions are attached are not necessary parties to a suit to recover obligations of the original county. After judgment the original county which is primarily liable may enforce contribution through the proper officers for the proportionate share of the detached portions.

In this case it was held that the facts justified the amount of the tax levy required by the writ of mandamus as modified by the Supreme Court of the Territory.

Practice of the courts in a Territory is based upon local statutes and procedure and this court is not disposed to review the decisions of the Supreme Court of the Territory in such cases, and, following the Supreme Court of the Territory of New Mexico, this court holds that the power of that court to affirm or reverse and remand includes the power to modify, and extends to proceedings in mandamus.

14 New Mexico, 134, affirmed.

THE facts are stated in the opinion.

*Mr. A. B. Renehan* for appellant:

The peremptory writ of mandamus should not have been issued without a hearing or opportunity for respondents to be heard. The writ is confined to the requirement of official duties of a ministerial character. 2 Spelling, Ex. Rem., §§ 1432–1434, 1437.

The court in mandamus proceedings can inquire into the original judgment so far as to ascertain whether the claim is legally payable out of the taxes sought to be applied. *Railroad Co.* v. *New Mexico*, 72 Pac. Rep. 14; *Brownsville* v. *Loague*, 129 U. S. 505.

The mandamus cannot be issued as there was no demand before suit. Spelling, Ex. Rem., §§ 1381, 1447. The action should have been directed against the treasurer of the county and not against the county board. Sections 4021, 4062, C. L. 1897; and see § 343; *Bass* v. *Taft*, 137 U. S. 752; *Ex parte Rowland*, 104 U. S. 615.

Where the facts are, as in this case, disputed, a peremptory writ cannot issue in the first instance. 13 Ency. Pl. & Pr. 722;

and see also 13 Ency. Pl. & Pr. 773–775; *State* v. *Goodfellow*, 1 Mo. App. 145.

The Supreme Court of New Mexico had no jurisdiction to modify the judgment of the lower court by changing the theory and cause of action. Under C. L. 1897, § 897, the power of the appellate court is limited to revising or modifying a judgment only in actions at law or equity and not in such proceedings as mandamus. *Territory* v. *County Commissioners*, 5 New Mex. 17. There being no statute in the Territory providing for jury trials in mandamus common-law procedure governs and the Supreme Court can only reverse or affirm. *State* v. *Suwannee County*, 21 Florida, 1; *Castle* v. *Lawler*, 47 Connecticut, 340; and see § 10, C. L. 1897, p. 43, act of September 30, 1850.

The remedy given by the statute, § 343, C. L. 1897, is exclusive. *Fourth Nat. Bank* v. *Francklyn*, 120 U. S. 751; 7 Ency. Pl. & Pr. 372.

The pleading being on information and belief is insufficient as the pleader had knowledge of the facts. *Jones* v. *Pearl Mining Co.*, 20 Colorado, 417; *Nichols* v. *Hubert*, 150 Missouri, 620.

The counties of Rio Arriba and Torrance were necessary parties under the existing laws of the Territory. Subsection 5, C. L. 1897, subs. 175; § 6, ch. 114, L. 1905; ch. 70, L. 1903; ch. 24, L. 1903; ch. 20, L. 1903.

Under the act of June 8, 1878, c. 168, 20 Stat. 101, explanatory of § 1889, Rev. Stat., the Territory was prohibited from issuing these bonds. *Lewis* v. *Pinia*, 155 U. S. 67. Although held valid in *Coler* v. *County Commissioners*, 6 New Mex. 88, the question of their validity under the act was not raised. The validating act of June 16, 1897, c. 30, 29 Stat. 487, although construed in *Utter* v. *Franklin*, 172 U. S. 498, does not validate these bonds as it is too indefinite to determine which bonds are validated. There is no element of *res judicata* in this case. The judgments are not attacked, only the method of enforcement and the excessive amount of the

levy. *Railway Co.* v. *Territory*, 72 Pac. Rep. 14; *United States* v. *Macon County*, 99 U. S. 591; *Brownsville* v. *Loague*, 129 U. S. 502.

*Mr. Charles A. Spiess* for appellee.

MR. JUSTICE MCKENNA delivered the opinion of the court.

These appeals are prosecuted to review judgments of the Supreme Court of New Mexico, modifying, and affirming as modified, judgments of mandamus of the District Court of Santa Fé County, commanding the appellants to levy a tax of ten mills in each case on each dollar of taxable property in the county, to pay certain judgments for the amount of principal and interest upon bonds issued by the county. The cases are here on separate records, but as they are submitted together we dispose of them, as the Supreme Court of the Territory did, in one opinion.

The proceedings were commenced by petitions, which are alike, except as to the amount of the judgment recovered. In No. 42 it is alleged to be $60,926.02; in No. 43 it is alleged to be $74,358.19. Both judgments were recovered in the District Court of the county in which the petitioners (appellees here) were complainants and the board of county commissioners were defendants. It is alleged that the judgments ordered the sums due as above stated, and the interest thereon to become due at five per cent per annum from the date of the judgments, "to be assessed and levied upon and out of the taxable property situate in the said county of Santa Fé, and to cause the same to be collected in the manner provided by law, and to pay the same out of the treasury of said county to the said complainants, their legal representatives or assignees, upon the delivery of a proper voucher therefor." Default in the payment of each of the judgments and its requirements is alleged, and that the board held a meeting during the month of July or August, 1905, and made a levy

for various territorial purposes, but "wholly failed and refused to make any levy whatsoever, and still fail and refuse to make any levy whatsoever, for the said year of 1905, for the purpose of raising funds to pay the aforesaid judgment and interest and costs thereon." The want of a plain, speedy and adequate remedy at law is also alleged. Peremptory writs of mandamus were issued without a hearing.

Subsequently the appellants filed a petition in each case in the District Court and prayed "that the peremptory order be suspended herein, and that they be permitted to show cause and be heard before the order and writ are made permanent."

To sustain this prayer they alleged that at the date of the rendition of the judgments of appellees all of the property within the county of Santa Fé subject to taxation was liable for the payment of its *pro rata* of the judgments; that the thirty-fifth legislative assembly "eliminated" portions of Santa Fé County, and attached them respectively to the county of Rio Arriba and the county of Torrance, and made them subject to their proportions of the indebtedness of Santa Fé County; that the taxable property situate therein is liable for its part of the indebtedness; that the county commissioners are without jurisdiction to levy and assess taxes upon it, and that the peremptory writs include only "the property and territory within the present boundaries" of Santa Fé, and do not pretend to include that in Rio Arriba and Torrance; that by a mandamus issued out of the district court on the twenty-fifth day of January, 1901, the county commissioners were required to levy a tax upon the taxable property in Santa Fé sufficient in amount to produce a sum of $135,284.19, with interest thereon from the twenty-fourth of September, 1900, until paid at five per cent per annum, and $30.00 costs, the said sum being for the amount of the judgments in cases 4091 and 4092 of the district court of Santa Fé County; that the board obeyed the writ and levied eighty-two mills on each dollar of taxable valuation, and

certified the same to the treasurer and *ex officio* tax collector of the county, and directed him to place the same on the tax rolls and collect in the manner provided by law; that the levy is still standing on the tax rolls of the county, and is a lien upon the taxable property of the county as then existing, and subject to the payment of the judgments; that the commissioners are without authority to enforce the same, and that the levy is ample and sufficient to cover the amount of the judgments in cases Nos. 4091 and 4092, and that the levy of ten mills in each case is largely in excess of the amount required, and is "unjust and unfair" to the taxpayers of the county of Santa Fé, and ruinous to its "progress and prosperity." It is alleged that the board is entitled to be heard on the amount of levy, or whether any levy should be ordered, as there exists a legal and adequate levy to cover the judgments; that it is impossible to determine the amount of levy necessary to be made for the year succeeding 1905 until the tax roll for that year has been completed and the amount of taxable property determined; that the board should not be held in default until the time shall arrive when the levy can be made, and they shall have failed to perform their duty; that the levy of the tax, as required by the writ, is not one which the law "enjoins as a duty resulting from an office, trust or station," because the levy of eighty-two mills, when collected, will be sufficient to pay the judgments, and that it is not a duty of the board to collect it, but "the duty of the treasurer and *ex officio* tax collector of Santa Fé County." It is alleged appellees have a plain, speedy and adequate remedy at law.

As an additional ground of the motions, it is alleged that the act of Congress, by which the bonds are "pretended to have been validated, approved, and confirmed, is indefinite, uncertain, and incapable of reasonable interpretation and enforcement, so as to be applied to any bonds issued by the county of Santa Fé," and does not sufficiently identify what bonds are intended to be validated, approved and confirmed;

nor what holders of the bonds, it being alleged that they "are subjects of different ownership and are not all in the hands of one. person, and it cannot be determined from the said act of Congress what holder of said bonds, in excess of the amount named in the said act of Congress, shall not have the benefits of validation." And further, that at the time of the passage of the act of Congress there was more than one refunding act in force in the Territory, but what refunding act is referred to by the act of Congress is not disclosed.

The motions to suspend the peremptory writs were denied and the orders denying them were affirmed by the Supreme Court of the Territory. The latter court, however, modified the writs, as will be presently pointed out.

The assignments of error in the Supreme Court of the Territory repeated and emphasized the grounds urged in the motions to suspend the peremptory writs of mandamus. In this court the modification of the judgments by the Supreme Court of the Territory is attacked and some new contentions are made.

The case is submitted on briefs, and we shall not attempt to trace an exact correspondence of the arguments of appellants with the assignments of error, nor indeed shall we follow the details of the argument, but consider those matters only which we think can in any way affect the merits of the controversy. It will be observed in the beginning that the writs of mandamus issued by the District Court are but the execution by it of its judgments of the twenty-fourth of September, 1900, the amounts of which the board of commissioners were ordered to assess against the taxable property of the county and pay the same. We may say, therefore, at the outset that whatever could have been urged to prevent the rendition of the judgments cannot now be urged to prevent their enforcement. This disposes of the defense made against the orders under review, that the act of Congress validating the bonds is uncertain and indefinite, even if it had merit otherwise. The objections that are urged against the act of Congress are

that it cannot be understood from it what refunding act is referred to, there being two, it is contended, or whether all of the bonds issued under it have been validated or only an amount thereof, not exceeding $172,500.00, and if no more than $172,500.00, which bonds have been validated. And it is urged further that there is no identification of what holders of the bonds in excess of the amount named in the act of Congress shall not have the benefits of the validation. Manifestly such defenses should have been set up in the original actions and are now precluded by the judgments therein rendered. It is established by the judgments that the amount of bonds issued was in accordance with the act of Congress and was not excessive in amount, and also that the plaintiffs in the action (appellees here) were legal owners of such bonds and entitled to the "benefits of validation." *Murphy* v. *Utter,* 186 U. S. 95, 113. The appellants, therefore, are confined to the other objections urged by them.

The principal of these objections is that peremptory writs should not have been issued without a hearing, and that there should have been a demand made of the commissioners before suit. As to the first, it may be said that it probably appeared to the District Court that the board could have no possible excuse, and in such case a peremptory writ is authorized in the first instance by the laws of the Territory. By § 2764 of the Compiled Laws of New Mexico for the year 1897 it is provided that "when the right to require the performance of the act is clear, and it is apparent no valid excuse can be given for not performing it, a peremptory mandamus may be allowed in the first instance."

The second ground is also untenable. The original judgments expressed the obligation of the board. They imposed the duty of levying taxes to pay them, and, it is alleged, that the board had levied taxes for other territorial and county purposes, but had failed and refused to make any levy whatever to pay the judgments. In other words, it is averred, that it is clearly the purpose of the board not to perform the

duty imposed upon it. In such a case no demand is necessary. *Northern Pacific R. R.* v. *Dustan,* 142 U. S. 492, 508.

We are therefore brought to the consideration of the sufficiency of the excuses which the board made in its motions to suspend the writs. We may briefly repeat them: (1) that portions of Santa Fé County were attached to other counties, which portions are subject to the payment of the judgments, and that the board is without jurisdiction over them; (2) that a levy of eighty-two mills had been made, which is a lien upon the property of Santa Fé County "as then existing," and that the board is without authority to enforce the collection of the levy; (3) that the levy of twenty mills (ten in each case) is excessive; (4) that the board was entitled to be heard as to the amount of the levy, or whether any levy was necessary, "there existing upon the tax rolls a legal and adequate levy to cover" the judgments which it is the duty of the tax collector to collect; (5) that it was impossible to determine the amount of the levy necessary for the year succeeding the year 1905 until the rolls for that year had been completed and the amount of taxable property determined; (6) that the board is not in default and should not be held liable until in default.

The District Court evidently considered that these excuses were without substantial merit, and such also was the view of the Supreme Court of the Territory. To the first, that is that the portions of Santa Fé County which had been segregated from it should have been included in the writs, it was replied by the Supreme Court that it was provided by Chapter 20 of the Session Laws of 1903 that such segregated portions were required to contribute their just proportion to the bonded debt of Santa Fé, that provision was made for assessment, levy and collection of such proportion by the officers of the new county upon the order of the old county, and that the money collected should be paid into the treasury of the old county. It was therefore decided that the county of Santa Fé could "compel contribution from the two other counties

which had received a portion of its territory, in proportion to the amount of taxable property received, and this is the method provided by law." This view of the statute is not directly attacked by appellants, and, if it may be said that the general argument is a criticism of it, the answer is what was said in *English* v. *Arizona*, 214 U. S. 359, 363, that "unless in a case of manifest error, this court will not disturb a decision of the ·Supreme Court of a Territory construing a local statute." Chapter 20 of the Session Laws of 1903 is an answer also to other contentions of appellants. If the county of Santa Fé is primarily liable for the bonds she is the proper party to an action upon them, and through her officers the payment of the judgments recovered can be enforced. The contention of appellants, therefore, that the counties of Rio Arriba and Torrance are "necessary parties to a complete determination of the case," is untenable, as indeed all other contentions that are based upon the addition to those counties of portions of Santa Fé County.

The most serious contentions of appellants are that the levy of eighty-two mills was sufficient to pay the judgments, interest and costs, and that the levy of twenty mills in addition was excessive. We think, however, that the reply made by the Supreme Court of the Territory adequately disposed of them. The learned court pointed out that the resolution of the board of county commissioners, a copy of which appears in the record, showed that the levy of eighty-two mills had the purpose only, and was sufficient only, to pay the then amount of the judgments, together with interest. It was further pointed out that the interest to accrue was not provided for, and that it amounted on the day when the peremptory writs of mandamus were issued to $32,874.05. It follows necessarily, as the court said, that the contention that the eighty-two mills levied was sufficient, "is unfounded and untrue in fact." To the contention that the twenty mills levied are excessive, in that they are more than sufficient to pay $32,874.05, the court replied that, if this were so, the

peremptory writs should· not have been issued. But, the court added, it is not shown that the assessable value of prop-erty in Santa Fé County has increased, while it does appear on the other hand that portions of the county had been cut off; therefore, it was said, it is fair to presume "that the assessed valuation of the county is not in excess of what it was in 1901, when the eighty-two mills levy was made." From this presumption it was concluded that· twenty ·mills would produce, if collected in full, $32,996.00, an excess only of $112.05. And it was observed that since the peremptory writs were issued interest had accrued to` the amount · of $10,000.00.

The writs required not only the levy of twenty mills for the year 1905,` but for each and every year thereafter and until the .judgments with interest and costs be paid. This the Supreme Court pronounced 'error, and modified the judg-ments by striking out the requirements for a continuous levy. This appellants assign as error, contending that the Supreme ·Court had no. jurisdiction to modify the judgments of the lower court, and that by .doing so it changed the "theory and cause. of action." The argument to sustain the contention is ·somewhat roundabout. Exclusive original jurisdiction in mandamus, it is said, is conferred on the District Court by § 2771 of the laws of the Territory, and, while an appeal lies to the Supreme Court. as in` other civil actions (§ 2772), that the power of the court to modify the judgment of a district· court, given` by § 897,[1] does not extend to a judgment in

---

[1] "In all cases now` pending in the Supreme Court or which may be hereafter: pending` in the Supreme Court, and which may have been tried by the equity side of the court, or which may have .been tried by a jury on .the common law side of the court, or in which a .jury may have been ·waived and the case tried by the court or the judge thereof;. it shall be the duty of the Supreme Court to look into all the rulings and decisions of the court which may be apparent upon the records, or which may be incorporated in the bill of exceptions, and pass upon all of them and upon the errors if any shall be found therein, in the rulings and decisions of the court below, grant a new

mandamus. The jurisdiction of the Supreme Court, it is urged, "was simply to affirm or reverse and remand." This, it will be observed, is very general. It would seem even to imply that the Supreme Court has not even the power of direction, but must leave the District Court to get right ultimately through successive judgments, appeals and reversals. And the anomaly is attempted to be sustained by saying that mandamus is not included in the useful power given to the Supreme Court by § 897 in cases taken to it to "render such other judgment as may be right and just and in accordance with law," because, it is said, that mandamus "is not a case on the equity side of the court, nor is it one tried on the law side with a jury, nor is it one in which a jury has been waived and trial had by the court or judge, especially as concerns the present proceeding." This is a misunderstanding of the statute. Its purpose is to not only give the power to review, but to prevent its defeat through the distinction between causes of action and modes of trial. Further argument is unnecessary. Even if the contention had grounds of support it would be answered by the case of *English* v. *Arizona*, 214 U. S. 359, and the case of *Armijo* v. *Armijo*, 181 U. S. 558, 561. In the latter case we said that practice "in the courts of the Territory is based upon local statutes and procedure, and we are not disposed to review the decision of the Supreme Court in such cases. *Sweeney* v. *Lomme*, 22 Wall. 208." Of the other contentions of appellants, it is enough to say that they are without merit.

*Judgments affirmed.*

---

trial or render such other judgment as may be right and just, and in accordance with law; and said Supreme Court shall not decline to pass upon any question of law or fact which may appear in any record either upon the face of the record or in the bill of exceptions, because the cause was tried by the court or judge thereof without a jury, but shall review said cause in the same manner and to the same extent as if it had been tried by a jury."