[No. 2911.   Jan. 17, 1924.]

## BOARD OF COM'RS OF GUADALUPE COUNTY. sitting as County Board of Finance, v. DISTRICT COURT OF FOURTH JUDICIAL DIST. et al.

### SYLLABUS BY THE COURT

1. A writ of prohibition is available, ordinarily, only in case an inferior court is proceeding without jursdiction, or in excess of jurisdiction.

2. Section 3416, Code 1915, authorizing a peremptory writ of mandamus in the first instance, and ex parte, against a board or officer under the circumstances enumerated in the section, does not violate the constitutional provisions for due process of law, and a district court, proceeding under this statute, has jurisdiction to decide whether the case is one in which a peremptory writ is authorized or not.

3. Section 19, c. 43, Laws 1917, furnishes an adequate remedy for erroneous judgment in mandamus, and a writ of prohibition will not ordinarily be issued by this court for that reason.

4. Where the jurisdiction of the district court has been challenged by a proper motion, and such motion remains undetermined in that court, a writ of prohibition will not ordinarily be issued by this court.

5. A voluntary appearance in a mandamus proceeding after the issuance of a peremptory writ, setting up a defense on the merits, is a general appearance, and places the party in the same position as if he had been served with process and had defaulted.

6. Section 2 of article 7 of the state Constitution merely enumerates the personal qualifications and characteristics of persons who are entitled to hold public office, and does not prohibit the Legislature from requiring bonds of officers as a condition of their being inducted into office and exercising the functions thereof.

BRATTON, J., dissenting.

Proceedings by the Board of County Commissioners of Guadalupe County, sitting as the County Board of Finance, against the District Court of the Fourth Judi-

cial District, and another, as Judge thereof, for a writ of prohibition. Writ discharged.

Fleming & Neal, of Santa Rosa, for petitioners.

It is contended by petitioner, first, that the District Court for the Fourth Judicial District never had nor acquired jurisdiction of the persons of these petitioners; second, that the court had no jurisdiction of the subject matter, or rather that the court exercised a jurisdiction in excess of that conferred by law, and, third, that the petitioners had no adequate or speedy remedy at law.

As to the first of these propositions: It will be observed that prior to the issuing of petitoners' Writ of Mandamus in this case, no process of any kind was ever issued or served upon petitioners, and the peremptory writ was issued without notice to them. In this connection, we should note that the peremptory Writ of Mandamus is a final judgment. Davies vs. Corbin et al, 28 Law Ed. 627. The provision of the chapter of the Code providing for procedure in civil cases has no application to writs of mandamus (C. L. 1915, Sec. 4256), therefore the common law procedure adopted by Section 1354 C. L. 1915 must be the rule of practice. The common law procedure in writs of mandamus has been clearly defined. Puterbaugh's Pleading and Practice, 8th ed. 563; Ex Parte Newmann et al, 20 Law Ed. 877; Life Insurance Co. et al v. Adams et al, 9th Peters 572; Postmaster General of the United States v. Trigg et al, 11 Pet. 173; Poultney v. City of Lafayette et al, 12th Pet. 472; Weaver et al v. Toney, Judge, et al, 54 S. W. 732; People v. District Court of Lake County, 68 Pac. 224.

Petitioners could not be said to have entered such an appearance after judgment as would confer jurisdiction upon their person and operate as a waiver of service of process in a mandamus case. Spencer v. Court of Honor, 139 N. W. 815; Godfrey v. Valentine, 40 N. W. 163. See also Todd et al v. De La Motte, 11 Pac. 90

As to the second proposition: In discussing the

jurisdiction of the court on the subject matter in this cause, it of course, is conceded that the District Court in a proper case would have the power to issue the writ, but we think that under and by virtue of section 3411 of the Code of 1915 the power of the court in a mandamus proceeding is limited and defined. By Chapter 71 of the same code the statute specifically provides when the writ will issue and, under the well established rule that the naming of certain conditions in a statute authorizing an act by necessary implications over all other conditions, the act is prohibited. Section 3414 of the 1915 code is to the power of the court in matters of mandamus and is simply declaratory of the common law, and the only question for this court to decide is whether or not the approval of the bond of the Treasurer of Guadalupe County by your petitioners herein is a ministerial act or one involving the exercise of judicial discretion. If the later, the court plainly exceeded its jurisdiction when it undertook, by a peremptory writ of mandamus, to control that judicial discretion. Section 4, Chapter 76, Session Laws of 1923, constitutes the County Commissioners of every county a Board of County Finance, and section 8 of the act makes it the duty of the Boards and the District Judge of the Fourth Judicial District to approve the bond of the County Treasurers.

It will be seen that the district judge who acted as a court issuing the peremptory mandamus in this case must himself exercise his discretion before the bond becomes effective, so that in this particular case we have the peculiar condition arising of an officer whose duty is to approve a bond, seeking to compel, by mandamus, other officers who are charged with equal discretion with himself to so approve it. And it will be observed that nowhere in the petition upon which the peremptory writ of mandamus is based, is there any allegation that the district judge is willing to or has approved such bond, and we respectfully submit that in this view of the case the district judge would be a necessary party to any action to compel the approval of such bond.

The courts have universally so held, without an exception, as far as we are advised (see R. C. L. Title Mandamus Sec. 38) in support of the doctrine that discretion cannot be controlled. However, in some jurisdictions the courts recognize an apparent exception to this rule and permit the writ to issue where there is an arbitrary abuse of the discetion although the court as a result, may be called upon to review the exercise of a discretionary power. 18 R. C. L. Sec. 39 and Sec. 40.

In this connection, however, it will be observed that our statute above referred to makes no exception.

The application for a writ of mandamus filed as exhibit "A" in this case discloses upon its face that the writ is sought to control the judicial discretion of the board as to powers conferred upon it by statute. See High on Extraordinary Legal Remedies, 3rd ed. Sec. 34, Sec. 46; 18 R. C. L. "Mandamus" Sec. 143 and cases cited; Hayne v. Justice Court, 82 Calif. 284; State v. Wood et al, 56 S. W. 476; People v. District Court of Lake County, 58 Pac. 604; State v. Bright et al, 123 S. W. 1057; State v. District Court, 146 Pac. 743; Weaver v. Tony, ante; State v. Circuit Court of Uclair County et al, 72 N. W. 193; Havemeer v. Superior Court et al, 24 Pac. 121; State v. Tracey, Judge, 140 S. W. 888; Noel v. Board of Education of Albuquerque, 27 N. M. 232. See also Ex Parte Newmann, 20 Law Ed. 877.

As to the third proposition: We think the petitioner has not a plain, speedy and adequate remedy at law for the reason that on account of the peculiar nature of this case an appeal would not operate as a stay of execution, or as a supersedeas. Tyler v. Hammersly, 44 Conn. 393. Our statute, however, Sec. 19, Chap. 43, Laws of 1917, authorizes appeals in mandamus cases, but the condition therein would most probably make the appeal unavailable. See 146 Pac. 743.

The general doctrine seems to be that if the remedy at law is speedy and adequate the remedy must be pursued. If not, prohibition will issue. But it is decided

that whenever, as incidental to the action of the court, there is involved an infringement of property rights, or a submission to a multiplicity of suits in such a way as to make its acts oppressive, there is no adequate remedy by appeal, and it is proper to issue the writ of prohibition; and this is true, whether the court in which the proceeding is instituted has acted or not, if the effect of the void authority under which it is assuming to act stands as a vexatious menace to personal liberty or the destruction of property rights. Crittenden vs. Booneville, 45 So. 723. This case decided on a statute like ours. 22 R. C. L. page 11 and note; State v. District Court, 146 Pac. 473.

O. O. Askren, of East Las Vegas, for respondents.

Where the lower court has jurisdiction of the parties and subject matter, prohibition will not lie. City of Roswell v. Richardson, 21 N. M. 104. Unquestionably the trial court would have authority to issue a writ of mandamus, and if the court has jurisdiction of a general class of cases to which the case belongs, a writ of prohibition will not lie to correct mere irregularities or to determine the sufficiency of the pleadings.

In this case it will be noticed that the trial court in the first instance did not give notice or issue an alternative writ. Even if this were error, which we do not concede, the same was cured by the entering of the appearance of the County Commissioners in the trial court, by the hearing had upon their pleadings, and by the granting of further time by the trial court for the Commissioners to be heard fully as to their objections to the approval of said bond before any final action was taken, and the Commissioners would have had an adequate remedy by way of appeal, in the event the trial court had held against them on their motion to quash, or if the trial court had held against them any other objections they might have interposed at two o'clock on December 10th, as set forth in the record. Ann. Cas. 1913D, 595.

A writ of prohibition will not lie where there is

an adequate remedy by an appeal, writ of error, writ of review, certiorari, injunction, or other appropriate proceeding. Ann. Cas. 1913D, 594.

In this case could not the Commissioners have had an adequate and speedy remedy by an appeal from the judgment of the trial court? Even if the trial court had held against them, or if they hadn't appeared at all in the case, on an attachment for contempt the Commissioners could have set up all their objections to the approval of the bond, and in that instance could have had an adequate remedy by way of appeal in the event the trial court should have held them in contempt. High's Extraordinary Legal Remedies, Section 549.

No doubt it will be contended by the Commissioners that the trial court was absolutely without jurisdiction because no notice was given before the issuance of the peremptory writ and while it is the general practice to either give notice or issue an alternative writ, we contend that a writ of prohibition will not lie to correct mere errors and irregularities of an inferior court, if the court has jurisdiction of the general subject and acquires jurisdiction of the parties, as was done in the trial court; and even though a court assumes to act in a case where it has no jurisdiction, this alone is not a sufficient ground for the issuance of a writ of prohibition, but a full, complete and adequate remedy can be obtained by appeal. Jacobs v. Superior Court, 133 Cal. 364, 65 Pac. 826, 85 A. S. R. 204; Crittenden v. Booneville, 92 Miss. 277, 45 So. 723, 131 A. S. R. 518. Note: 1 Ann Cas. 713. In re Alix, 166 U. S. 136, 17 Sup. Ct. 522, 41 U. S. (L. Ed.) 948; Ex Parte Okla, 220 U. S. 191, 31 Sup. Ct. 426, 55 U. S. (L. Ed.) 431; Finley v. Moose, 74 Ark. 217, 85 S. W. 238, 109 A. S. R. 79; Pennsylvania R. Co. v. Rogers, 52 W. Va. 450, 44 S. E. 300, 62 L. R. A. 178. Notes: 111 A. S. R. 959, 960: Notes 1 Ann. Cas. 714.

''Nor does it affect the jurisdiction that the error or irregularity is palpable or gross. It is, nevertheless,

merely error and not usurpation of power. It may sometimes seem like usurpation when a court permits or authorizes some act in the course of a proceeding which is clearly and manifestly erroneous, but all such acts amount only to an erroneous exercise of jurisdiction, and not to an excess of it, as the term ''excess'' is understood and applied by both courts and lawyers.'' Board of Home Missions, etc., v. Maughan, 35 Utah 516, 101 Pac. 581, 24 L. R. A. (NS) 874.

A peremptory mandamus may be granted in the first instance in remarkably clear cases. Board of Police of Attala Co. v. Grant, 47 Amer. Dec. 102. The Board of County Commissioners of Knox County v. Wm. H. Aspinwall, et al, 16 L. Ed. 735.

It will probably be contended by the Commissioners that Judge Leahy should have been joined as a defendant; however, it is the practice to make no other persons parties respondent than the officers whose conduct is called in question. High on Injunctions, Section 440; and Frye v. Reynolds, 33 Ark. 450. Attorney. General v. Newell, 85 Me. 246. And further it has been held that if the application is against two officers jointly, and it cannot be sustained as to one of them it nec-' essarily fails as to both. People v. Yates, 40 Ill. 126. Therefore, if the writ had issued against the Commissioners and Judge Leahy jointly, if Judge Leahy had previously approved the bond the writ would necessarily fail.

The general rule is that judicial or quasi judicial discretion cannot be controlled by mandamus. However, an exception to the rule is that where no remedy is provided by appeal and there is a flagrant abuse of discretion by the corrupt and arbitrary exercise of it, mandamus will lie. State ex rel Adamson v. County Court, 41 Mo. 149; State ex rel John R. Blenkenship v. County Court of Texas County, 44 Mo. 230; Wood v. Strother, 76 Cal. 545; Shotwell v. Covington, 69 Miss. 735 (this case is contrary, but because of the reasoning the same should be noticed). See 98 Amer. Dec. 375.

41 Mo. 149; State exrel John R. Blenkenship v. County Court of Texas County, 44 Mo. 230; Wood v. Strother, 76 Cal. 545; Strotwell v. Covington, 69 Miss. 735. (This case is contrary; but because of the reasoning the same should be noticed.) See 98 Am. Doc. 375.

While the petition for the mandamus may not have been sufficient to issue the writ under the theory as set forth in the above cases, still a writ of prohibition will not lie to correct or determine the sufficiency of the pleadings. Woodworth v. Superior Court, 153 Cal. 38. Line v. Superior Court, 11 Cal. 1; State v. Gates, 190 Mo. 540, 2. L. R. A. (NS) 162; State v. Medler' (N. M.) 131 Pac. 976.

Mechem & Velacott, of Albuquerque, F. Faircloth, of Santa Rosa, and E. D. Tittman, of El Paso, Tex., amicus curiae.

### OPINION OF THE COURT

PARKER, C. J. On December 12th a petition for a writ of prohibition was filed in this court, seeking to prohibit the district court of the Fourth Judicial district, and D. J. Leahy, as judge of said court, from further action in a mandamus proceeding hereinafter to be noticed. We issued an alternative writ of prohibition as prayed, returnable on December 20th. On said day there was filed and presented a demurrer to the petition for the writ, setting up four grounds of alleged insufficiency, as follows:

"(1)  That the petition does not state facts sufficient to warrant the issuing of the writ of prohibition, for the reason that it appears from the petition that the respondents have jurisdiction both of the subject-matter of the proceedings complained of and the parties thereto.

"(2) That said petition fails to state facts which show that the petitioners have no other plain, speedy, and adequate remedy in the ordinary course of law for the protection of their rights.

"(3) That said petition shows that an objection to the jurisdiction of the trial court was made and remained pending and undetermined.

"(4) That said petition fails to state that an application to the trial court for a decision that it has no jurisdiction had been refused.

The proceeding in which action was sought to be prohibited was a mandamus proceeding, brought by the state on the relation of one Simon Serrano, treasurer of Guadalupe county, against J. W. Melaven, J. L. Ambercrombie, and Vic Segura, as members of the board of county commissioners and ex officio board of finance of Guadalupe county. It appears from the petition that the National Surety Company, which had theretofore furnished bond for the relator, had notified him of the cancellation of his official bond within 30 days after November 3, 1923, and that on December 3, 1923, he filed an official bond with the county clerk of Guadalupe county in the sum of $75,000 as required by law, with personal sureties thereon. On December 4, 1923, the board of county commissioners of Guadalupe county met as a board of finance for the purpose of examining and approving said bond. Upon said examination of said bond by said board of county commissioners, sitting as such board of finance, they objected to the financial statement of several of the sureties on said bond, and gave the relator until 9 o'clock the next day to bring in all of said named persons and to correct their respective financial statements; that at 9 o'clock the next day, in accordance with the order of said board, the relator had all of said persons present to make the corrections in their respective financial statements, as required by said board; that said board at that time refused to allow the said named persons to make the corrections previously required by said board; that all of said corrections requested of said named persons by said board were of minor importance; and that all of said sureties on said bond were the owners of real estate in New Mexico and taxpayers for more than double the amount for which they had qualified on said bond, over and above all of their debts and liabilities. The board thereupon refused to approve said bond, and entered a resolution reciting that the relator was without bond, and that it was necessary that some person under bond and responsible should be at all times in charge of the office, and that said

JANUARY TERM, 1924.     253

Bd Com'rs Guadalupe Co. v. Dist. Ct. 4th Jud. Dist., 29 N.M. 244

J. W. Melaven, a member of said board of finance, was appointed until the further order of the board to supervise the office of relator as treasure of Guadalupe county, and that each depository bank where public funds were deposited was instructed not to honor or pay any checks drawn after December 2, 1923, until further notice from said board of finance.

It was further alleged that the action of said board of county commissioners, sitting as said board of finance, was arbitrary in refusing to approve said bond and allow the corrections to be made that were requested by said board, and that, by the action of said board in refusing to approve said bond, the said board was endeavoring to remove the relator from his said office for the purpose of appointing another person in his place as said treasurer of Guadalupe county. The resolution of the board of county commissioners further provided that the relator should have twenty days from the 4th of December within which to perfect his bond.

A peremptory writ of mandamus was issued upon this petition, commanding said board to approve the said bond, and directing said board to make known before the court at chambers at Las Vegas on the 10th day of December, 1923, how they had executed the writ.

On the 8th day of December the board of county commissioners appeared in the mandamus proceeding, and filed therein a motion to quash the writ, or to modify the same so as to permit respondents to answer and be heard on the merits. The motion set up that the said district court was wholly without jurisdiction to issue a writ of mandamus requiring the approval of the bond of the said treasurer; that the said district court and judge had no power to issue a mandamus against said board, for the reason that both the said judge and the board were required by statute to approve the same bond (this objection seems to have been abandoned, as it is not argued before us) ; that the said board had a valid and legal defense to the petition of the relator,

254    SUPREME COURT OF NEW MEXICO

Bd Com'rs Guadalupe Co. v. Dist. Ct. 4th Jud. Dist., 29 N.M. 244

in that in truth and in fact the bond referred to was wholly insufficient, in that the signers and makers thereof are not as a matter of security worth the sum of $75,000 but, as the said board honestly believed, and, if given opportunity, was ready to offer proof, they were not worth to exceed the sum of $50,000; that many of the sureties on said bond did not justify or qualify, as is by law required, and did not make true and correct answers to the questionnaires submitted to their true worth, as is by law required; and that said bond was signed by a county officer of Guadalupe as one of the sureties, contrary to the laws of the state.

The board thereupon asserted their honest belief in all of the foregoing facts, and offered, if given opportunity, to make and furnish proof thereof. They further alleged in said motion that said writ of mandamus was issued without notice to them, and that they learned the previous day of the issuance of said writ, and had had no opportunity to be present, or to present a defense before the issuing of said writ.

Upon the presentation of the motion it is alleged that the district judge asserted from the bench that the court had jurisdiction of the cause, but that he did not make any order either sustaining or overruling said motion, but notified the said board to be present in obedience to said writ of mandamus at 2 o'clock on Monday, Dec. 10, 1923.

[1] 1. It is to be conceded that a writ of prohibition is available, ordinarily, only in case an inferior court is proceeding without jurisdiction, or in excess of jurisdiction. In State v. Medler, 17 N. M. 644, 131 Pac. 976, Ann. Cas. 1915B, 1141, a complaint for removal from office of some public officer was challenged on the ground that it failed to state a cause of action, and relators urged that therefore the court had no jurisdiction of the subject-matter and should be prohibited. In that connection we said:

"The argument of the relators that by reason of the failure

JANUARY TERM, 1924.        255

Bd Com'rs Guadalupe Co. v. Dist. Ct. 4th Jud. Dist., 29 N.M. 244

of the complaint to state a cause of action, the court has never acquired jurisdiction of the subject-matter, and should be prohibited from further entertaining the cause, is clearly untenable. The subject-matter of the proceeding against the relators is clearly within the general jurisdiction of the district court of Dona Ana county. If the court proceeds upon a complaint which does not state a cause of action, it commits an error which is reviewable only upon appeal or writ of error. As is well said in State v. Brown [Okl.] 103 Pac. 762: 'It is a well-settled rule that, where an inferior court has jurisdiction to take the action contemplated under any circumstances, the exercise of such power by him involving a judicial discretion, a writ of prohibition will not lie. It is only where an inferior tribunal is about to do some act wholly unauthorized by law, or in excess of its jurisdiction, that the writ will lie.' "

See also, State ex rel. Brown v. District Court, 27 Utah, 336, 75 Pac. 739, 1 Ann. Cas. 711, and note, where the authorities are collected.

It is apparent, therefore, that, if the district court in this case had jurisdiction to issue the peremptory writ ex parte, the judge should not be restrained by prohibition.

[2] 2. Upon the subject of issuing ex parte peremptory writs there are some statutory provisions and decisions of this and other courts to be examined. In 1884 an act was passed regulating the practice in mandamus, and one section of that act is carried forward as section 3416, Code 1915, and is as follows:

"When the right to require the performance of the act is clear, and it is apparent that no valid excuse can be given for not performing it, a peremptory mandamus may be allowed in the first instance; in all other cases the alternative writ shall be first issued."

. Prior to the passage of this act, the territorial court had held that it was erroneous to issue ex parte peremptory writ of mandamus. See Armijo v. Territory, 1 N. M. 580. Subsequent to that act, in 1907, there was before the territorial court the case of Territory ex rel. Coler et al, v. Board of County Commissioners of Santa Fe County, 14 N. M. 134, 89 Pac. 252. In that case a peremptory writ of mandamus was awarded ex

256    SUPREME COURT OF NEW MEXICO

Bd Com'rs Guajdalupe Co. v. Dist. Ct. 4th Jud. Dist., 29 N.M. 244

parte commanding the board to levy a certain tax to pay interest on judgments theretofore rendered against the county in favor of the relators. The point was not raised by counsel for the respondents in that case that a peremptory writ of mandamus might not in any case be issued ex parte, and without notice and opportunity to be heard. But it was argued that the peremptory writ would not lie in a matter requiring the exercise of judgment and discretion. In that case, as in this one, the respondents appeared and moved the court for a suspension of the peremptory writ, and that they be allowed to show cause and to be heard before the said writ should be made permanent. This application was denied by the district court. The case was appealed to the Supreme Court of the United States, and is reported in 215 U. S. 296, 30 Sup. Ct. 111, 54 L. Ed. 202. In that court the point was directly presented as to the power of the district court to award a peremptory writ of mandamus in the first instance and ex parte, and upon this subject the court said:

"The principal of these objections is that peremptory writs should not have been issued without a hearing, and that there should have been a demand made of the commissioners before suit. As to the first, it may be said that it probably appeared to the district court that the board could have no possible excuse, and in such case a perempory writ is authorized in the first instance by the laws of the territory."

The court then quoted the statute above mentioned as authority for the action, but did not discuss the proposition as to whether the awarding of the peremptory writ, which, of course, is a final judgment without notice and opportunity to be heard, would violate any constitutional right, but merely assumed the statute to be sufficient authority for such action. We have examined the original transcript in that case, and find that the respondents appeared before the court which had awarded the peremptory writ and showed divers and sundry reasons why, on the facts set up, the writ should be suspended, and they should be allowed to be heard before the writ should be made permanent.

This petition upon hearing was denied by the district court. The procedure in that case was the same as in the case at bar, except that in the present case the application was still pending and undetermined at the time we issued the alternative writ of prohibition. That case was of course a very clear one, and one which, if in any case a peremptory writ may be issued ex parte, authorizes the action taken by the district court, because the facts were such that the court could take ju-. dicial notice that there was no excuse whatever for refusing to make the tax levy.

The question remains, however, whether the statute itself does not violate the constitutional rights of the citizen in authorizing ex parte proceedings against him. If the statute is valid, then the district court of San Miguel county had jurisdiction to issue the peremptory mandamus, because it was within the judicial discretion of the court to determine whether the case before it was one within the terms of the statute. If he should erroneously determine the question, the remedy is by appeal and not by prohibition.

Some other states have statutes identical with ours. In Home Insurance Co. v. Scheffer, Treas., 12 Minn. 382 (Gil. 261), a peremptory mandamus was allowed ex parte against the state treasurer to compel him to furnish the insurance company with a certificate to do business in Minnesota. The petition set up a compliance by the petitioner with the provisions of a certain statute as a prerequisite to do business in the state. The court, in construing the provisions of the statute which authorizes the peremptory writ when "the right to require the perfomance of the act may be clear," and when it is "apparent that no valid excuse be given for not performinig it," said:

"We do not intend to intimate that there may not possibly be cases in which the facts or grounds of application may be so indisputable—facts, for instance, of which a court will take judicial notice—and the urgency so great, as in the case of Regina v. Fox, 2 Ad. & Ell. (N. S.) 246, as to warrant the issue of the peremeptory writ in the first instance, and ex

parte; but we think that as a general rule, subject to very few exceptions, if the peremptory writ is to be applied for in the first instance, it should be upon notice, and if the circumstances call for great dispatch, there will be few cases in which this cannot be attained under an order to show cause. * * * It will not do to say that the peremptory writ should be issued in the first instance, whenever the allegations of the petition make out a case for its allowance; if this were so. a peremptory mandamus, or none, should always be issued in the first instance. If the plaintiff does not, upon his own showing, make out a case entitling him to compel the performance of the act desired by mandamus, then he has not put himself in a position to ask for either writ, the alternative, or the peremeptory. The questions to be decided in order to determine whether the right is clear, and whether no valid excuse given are (1) Is this showing true? and (2) Does the tribunal applied to know it to be true, on account of the nature of the fact shown, or from the admissions of the defendant? Such is, we think, the proper construction. of the statute."

The Minnesota court held in that case that an alternative writ should be issued and remanded the cause with directions to that effect, upon the ground that the facts were not so indisputable as that the court might take judicial notice of the same. The court, however, assumed that in a proper case the peremptory writ might issue ex parte and without notice and opportunity to be heard.

In the case of Queen v. Fox, 2 Ad. & Ell. (N. S.) 246, 42 Eng. Com. Law Rpts. 658, referred to in the Minnesota case quoted above a jailer refused to deliver up the body of a person who had died, while a prisoner in execution in his custody, to the executors of the deceased, unless they would satisfy certain claims made against the deceased by the jailer. The executors applied for a writ of mandamus in the Court of Queen's Bench, and a peremptory writ was issued without notice or hearing. In that case Lord Denman, Chief Justice, said for the court:

"I think this is a case in which we ought not to wait for a return, but that the mandamus should be peremptory in the first instance. If Scott has any answer to give, he can do so, not by way of return, but in showing cause why an attachment should not issue."

Nebraska has the same statute. In Horton v. State,

60 Neb. 701, 84 N. W. 87, a peremptory mandamus was issued against a private corporation, and for that reason, among others, the cause was reversed and the writ dischaged.   But, in the discussion of the Nebraska statute, the court said:

"This statute undoubtedly provides for the issuance of the pertmptory writ without notice where the court or judge can clearly see that the refusal of the respondent to perform some duty resulting from his office, trust, or station can admit of no possible justification.  Cases may arise in which the refusal of a public officer to discharge an official duty is so obviously inexcusable, and the necessity for prompt action so imperative, that notice must be dispensed with in order to prevent a failure of justice.  In this class of cases the respondent loses nothing by the judgment, and no right secured to him by either the state or federal Constitution is infringed.  But while it is doubtless competent for the Legislature to authorize the courts in a proper case to coerce official action without notice and an opportunity to the recalcitrant to be heard, we are of opinion that no such power can be lawfully exerted against a private corporation or the officers by which its functions are performed.  It is a fundamental principle of justice that before a person can be deprived of his property, or of any valuable right, by the exercise of judicial or other governmental power, he must be warned of the proceeding against him, and be afforded a reasonable opportunity to be heard in his defense."

The Nebraska court thus clearly points out the distinction between those cases involving a duty arising out of a public office, trust, or station, in which it holds that no personal or property right is involved, and those cases involving a property right, and holds that in the former notice and hearing are not guaranteed by the constitutional provisions, and that in the latter the same must be afforded.   This is the only direct reference in this subject which we have been able to find in the books, but the distinction pointed out in the Nebraska case seems to be sound.  A public officer, who is commanded to perform an official duty, suffers neither in his personal, nor his property rights, and these rights alone are safe-guarded by the Constitution.   It was therefore within the power and jurisdiction of the district court, under the statute above quoted, to issue the peremptory writ ex parte.   Whether that power was

exercised correctly or erroneously is another question, and a question to be determined by us, if at all, upon review on writ of error or appeal and not by prohibition.

[3] 3. There are other reasons why the alternative writ of prohibition was improvidently issued by us. There is another and an adequate remedy by appeal. The statute on the subject is as follows:

"In all actions of contested elections, mandamus, removal of public officers, quo warranto or prohibition, it shall be discretionary with the court rendering judgment, or the Supreme Court, to allow a supersedeas of such judgment, and if said appeal or writ of error shall be allowed to operate as a supersedeas it shall be upon such terms and conditions as to the court.may seem meet and proper." Section 19, c. 43, Laws 1917.

It was suggested upon the argument that, inasmuch as the right to supersede the judgment was discretionary with the court, or this court, the remedy by appeal or writ of error was not adequate. This proposition is untenable. Courts are to be always presumed to act fairly and impartially, and to administer justice to all the people. If the litigant is doubtful in a mandamus case as to whether he might secure a supersedeas of the judgment from the district court awarding the same, he may sue out a writ of error in this court, and apply to this court for such supersedeas. If he ought to have the supersedeas, he will obtain the same in one or the other of the two courts. His remedy is speedy, it requiring only a few days to perfect his transcript, and to present the same to this court. For this reason alone, the writ of prohibition should not have been issued.

The unsoundness of the position of counsel for the relators to the effect that appeal or writ of error is not an adequate remedy is made more apparent by the suggestion that they are now in the same position which they would be in case there had been first issued an alternative writ which had been made per-

JANUARY TERM, 1924.          261

Bd Com'rs Guadalupe Co. v. Dist. Ct. 4th Jud. Dist., 29 N.M. 244

emptory on final hearing. In such a case the granting of a supersedeas would still be discretionary with the district court, or with this court, just the same as it is in the present situation, and it could hardly be said that the action of the district court should, in such a case, be controlled by a writ of prohibition.

[4] 4. There is another matter which should have prevented us from issuing the writ, and that is that a motion to be allowed to appear and defend and show cause why the peremptory writ should not be put into operation was pending and undetermined at the time of the application to this court for the writ of prohibition. It is not within the province of this court to interfere by a writ of this character with the duties of the district court which is proceeding to hear and determine the matter before it. Until it has decided the matter, at least ordinarily, the writ should not be issued by this court. There is a spirit of confidence and respect which should at all times be entertained between courts of superior and inferior jurisdiction. And that a question pending before an inferior court will be correctly decided should always be assumed by us. See State v. Superior Court, 2 Wash. 9, 25 Pac. 1007; City of Little Rock, Ex Parte, 26 Ark. 52; Williams, Ex Parte, 4 Ark. 537, 38 Am. Dec. 46; Mining Co. v. District court, 7 N. M. 486, 38 Pac. 580; Tapia v. Martinez, 4 N. M. (Gild.) 329, 16 Pac. 272; People v. District Court, 30 Colo. 488, 71 Pac. 388; Hill v. Tarver, 130 Ala. 592, 30 South 499; Butler v. Williams, 48 Ark. 227, 2 S. W. 843; Chester v. Colby, 52 Cal. 516; 21 Standard Ency. Proc. 817; 22 R. C. L. Prohibition, § 29.

[5] 5. Thus far we discussed the proposition in hand on broad principles and doctrine, rather than having resort to any of the so-called technical rules of law. There is a matter, however, of far reaching importance. which was mentioned in the preceding paragraph of this opinion, and that is that a motion to be allowed to appear and defend and show cause why the peremptory writ should not be put into operation, setting up

the facts on the merits, was filed by the respondents. This clearly was a general appearance on the part of the respondents. This general appearance gave the court jurisdiction of the person of the respondents, and placed them in the same position as if they had been served with notice before the issuance of the writ and had defaulted, and they cannot now urge want of notice and opportunity to be heard before the issuance of the writ. See Crowell v. Kopp, 26 N. M. 146, 189 Pac. 652, where the New Mexico cases are collected. See, also, Fiske v. Thorp, 60 Neb. 713, 84 N. W. 79; 4 C. J. Appearances, § 64.

[6] 6. Mr. Edward D. Tittman appeared as amicus curiae and pointed out some constitutional and statutory provisions to the effect, he argues, that the legislature has no power to require, as it has done, the giving of a bond by treasures and ex officio collectors, and that therefore this whole proceeding by the district court in mandamus, and by this court in prohibition, should fail. This is an astounding proposition, if it is sound. Counsel cites two constitutional provisions. Section 2, of article 7, of the Constitution, is as follows:

"Every male citizen of the United States who is a legal resident of the state and is a qualified elector therein, shall be qualified to hold any public office in the state, except as otherwise provided in this Constitution. * * *"

This section has been amended so as to make women, as well as men, eligible to hold public office. See Laws 1921, p. 468.

Section 19, of article 22, of the state Constitution, is as follows:

"Within thirty days after the issuance by the President of the United States of his proclamation announcing the result of said election so ascertained, all officers elected at such election, except members of the Legislature, shall take the oath of office and give bond as required by this Constitution or by the laws of the territory of New Mexico in case of like officers in the territory, county or district, and shall thereupon enter upon the duties of their respective offices; but the Legislature may by law require such officers to give other or additional bonds as a condition of their continuance in office."

This latter section is a part of the article on Schedule, which article was designed to avoid the inconvenience which might arise during the period of change from the territorial to the state form of government.

The position of counsel amounts simply to this: The Constitution provides that all qualified voters are qualified to hold public office without additional burdens or conditions. The imposition of the requirement of bond for certain classes of public officers is the superaddition of requirement to hold public office not authorized by the Constitution; therefore the statute violates the Constitution and is inoperative. If counsel's premises are sound, the conclusion is inevitable.

The error, however, lurks in his major premise. The Constitution does not provide that all qualified voters may hold public office without additional burdens or conditions. Article 7, §2 of which is above quoted, relates generally to the elective franchise and right to hold office. It is concerned entirely with the definition of the personal qualifications and characteristics of persons who may vote, hold office, and sit as jurors. It does not purport to deal with anything else. Under such circumstances, the word "qualified," as employed in the section, must be held to be the equivalent of the word "eligible." The section is designed merely to point out the class of persons who are eligible to be chosen to hold public office and does not in any way attempt to deal with the subject of how, and in what manner, these officers shall qualify before entering upon the discharge of their duties. This being the case, we know of no principle which could restrict the Legislature in the requirement of bonds of public officers. The absurd consequences of holding otherwise is emphasized by reference to section 19, of article 22, of the Constitution, above quoted. In that section the Legislature is empowered to require bond of all officers elected at the first state election as a condition of their continuance in office; but, according to the argument of counsel, all officers elected at the second, and all subsequent, state elections, were to be exempted from

any such requirement. Such could not have been the intention of the Constitutional Convention, and this would be the consequence of giving to the word "qualified" the meaning argued for by counsel. It is true we commonly speak of an officer as duly elected, or appointed, and qualified, meaning by the latter term that he has taken the oath and given the bond required by law, but in this connection the word can have no such meaning.

Counsel in support of his position cites Thomas v. Owens, 4 Md. 189. In that case the question was to the right of a state officer to compensation. A new Constitution had been adopted which prescribed the method of qualifying by the comptroller of the treasury, and he had complied therewith on December 10, 1851. The Constitution also provided that the Legislature might prescribe other forms of oath and bond as it might determine. The Legislature did not meet until some time in 1852 (Laws Md. 1852, c. 12), when it did prescribe the form of oath and bond which should be required of the officer. It was argued in that case that, inasmuch as the Constitution provided that the officer should take such oath and enter into such bond as the Legislature should prescribe, and that, as the Legislature did not prescribe such oath, nor fix the form and penalty of the bond until the act of 1852, there could be no qualification within the meaning of the Constitution until the Legislature had met and passed the act of 1852. The court held that the officer was entitled to his compensation from December 10, 1851, when he was qualified according to the provisions of the Constitution, and that he was constitutionally inducted into his office, and might retain the same without additional burdens or conditions until the Legislature changed the form of oath and bond, when, of course, he would be compelled to comply therewith. It is to be seen that in this case the Constitution itself provided the form of steps necessary to be inducted into office, and that it likewise provided that the legislature might change the form thus provided in the Constitution. It was in this connection that the Maryland courts said:

JANUARY TERM, 1924.        265

Bd Com'rs Guadalupe Co. v. Dist. Ct. 4th Jud. Dist., 29 N.M. 244

"Where a Constitution defines the qualification of an officer, it is not within the power of the Legislature to change or superadd to it, unless the power be expressly, or by necessary implication, given to it.   *   *   *"

. This holding was, of course, correct. The Constitution itself in that case prescribed the steps necessary to be taken to qualify the officer to exercise the functions of his office, and the Legislature, without some express, or necessarily implied, grant of power to change such requirement, would not have the authority to do so. But in the case at bar the Constitution prescribes no steps to be taken by the officer in order to qualify him to assume the duties of his office, and in this particular lies the distinction between the present case and the Maryland case.

Judge Cooley cites the Maryland case and points out in accordance with the Maryland court that, where the Constitution defines the qualifications of the officer (meaning of course where the Constitution points out the steps necessary to enable the officer to assume the duties of his office), it is not competent for the Legislature to change or superadd to them, unless empowered so to do by the Constitution itself. Cooley's Const. Lim. (7th Ed.) p. 99.

Counsel also cites Black v. Trower, 79 Va. 123, but this case has no application, except perhaps to emphasize what we have heretofore said. The Legislature had passed an act prescribing that members of electoral boards should be freeholders, which contravened a provision of the Virginia Constitution similar to the one we have been discussing. The court of course held that the act was unconstitutional for the reason that it superadded to the personal qualifications as to eligibility for office something which the Constitution had not provided for.

Counsel also cites Barker v. People, 3 Cow. (N. Y.) 686, 15 Am. Dec. 322, but the case is of such character as to have no relevancy to the present discussion.

It thus appears that the argument of counsel that

the Legislature has no right to require bond of public officers handling the public moneys is without foundation.

It follows from all of the foregoing that the alternative writ of prohibition was improvidently issued and should be discharged, and it is so ordered.

BOTTS, J., concurs.

BRATTON, J. (dissenting). We find ourselves at the parting of the ways, and, since I cannot agree with the majority or go with them, it must result, as it did with Abraham and Lot in the days of old, that we "shall separate ourselves the one from the other": the majority speaking for the court and registering its decree, while I must remain in the solitary and inhospitable domain of dissent. I recognize that no dissenting opinion can ever be justified unless it is right; that even then it is most unavailing unless it results in arresting attention, exciting inquiry, provoking discussion, and ultimately leads to the ascertainment of the truth. As to whether I am right in my conclusions upon the serious question of law with regard to which we differ, will be determined by a generous profession in this and other times. I trust that what I shall say may arrest attention, excite inquiry, provoke discussion, and ultimately at some good time yet to come, lead back to the protection of a constitutional guaranty which I believe to be violated by the majority opinion.

1. It is held in the opinion of the court that under the provisions of section 3416, Code 1915, a peremptory writ of mandamus, which is the final judgment in the case, may, in certain cases, be issued in the first instance, and the defendant thereby ordered, by such final judgment, to do or perform a given act without ever at any time or in any manner having an opportunity to speak or be heard in his behalf upon either the law or the facts—just what was done in this case. This, in my judgment, violates the express provisions of section 18, of article 2, of the Constitution of this state, which provides:

"No person shall be deprived of life, liberty or property without due process of law; nor shall any person be denied the equal protection of the laws."

—as well as section 1 of the Fourteenth Amendment to the Constitution of the United States, which is in this language:

"All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

"I shall not consume time and space in discussing the general rule that a statute which authorizes or permits taking life, liberty, or property without notice thereof is invalid because it violates the constitutional provisions quoted. In Lacey v. Lemmons, 22 N. M. 54, 159 Pac. 949, L. R. A. 1917A, 1185, section 1632, Code 1915, was held to be void because it authorized the taking and sale of certain kinds of live stock without notice thereof to the owner of such live stock. Again, in Janes v. West Puerto De Luna Comm. Ditch, 23 N. M. 495, 169 Pac. 309, sections 5739 to 5743, both inclusive, were held to be void because they authorized the appointment of appraisers, and prescribed the powers and duties of such appraisers as well as the procedure to be followed with reference to fixing the value of the lands taken or to be taken, without giving the owner of such lands any notice thereof. It is needless to discuss this general phase of the subject further, as we do not disagree upon the general statements made, but it is thought by the majority that this case does not come within the general rule; that the constitutional guaranty applies to the taking of life, liberty, and property, and that a public officer, who is commanded to perform an official act, suffers neither in his personal, nor his property, rights. It is upon this that I cannot agree. The case involved no personal or private rights of the respondents, but it did involve property rights of the public citizenry and taxpayers

268    SUPREME COURT OF NEW MEXICO

Bd Com'rs Guadalupe Co. v. Dist. Ct. 4th Jud. Dist., 29 N.M. 244

of Guadalupe county which the respondents represented in their official capacity as the board of finance. They were made parties in such official capacity, and it was in that capacity that they were adjudicated and foreclosed by the final judgment rendered ex parte without their having any opportunity to be heard with reference to the law or to the facts. The public had a right which was involved. To illustrate, if the respondents had obeyed the writ, and the bond so approved had proven to be utterly worthless, with the result that the state and county should lost large sums of money, as the direct result of the respondents being compelled, against their will, to approve such bond, can it be said that no property right would be thereby injured? I cannot escape the conclusion that the public had a property right in the subject involved, which the respondents represented in their official capacity; that such right was directly affected, in fact, it was completely adjudicated by the final judgment rendered without any notice whatever. This is what the statute permits to be done, and hence it violates the constitutional provisions referred to.

The majority apparently gives consideration to the case of Territory ex rel. Coler et al. v. Board of County Comm'rs, 215 U. S. 296, 30 Sup. Ct. 111. 54 L. Ed. 202. wherein the statute in question was cited and discussed by the Supreme Court of the United States, but the constitutionality thereof was not discussed nor determined, and hence it cannot be considered as authority here. The court there merely held the statute expressly authorized the issuance of a peremptory writ of mandamus in the first instance in certain cases. This is conceded, but the defect which lurks in the statute was not passed upon.

2. The majority further holds that the subsequent appearance by the respondents upon their motion to be allowed to appear and defend constituted a general appearance and gave the court jurisdiction of their person. This does not affect the validity of the statute in question. It was not what was done under a statute

in a given case, but the test is what may be done that determines its constitutionality. Lacey v. Lemmons and Janes v. West Puerto De Luna Comm. Ditch Co. supra. Under the statute in question, the final judgment could have been rendered without any notice whatever, and without any appearance on the part of the respondents. This violates one of the sacred and fundamental theories of our form of government.

3. If the peremptory writ issued under an unconstitutional statute, the court acted without jurisdiction. In such an instance, it is conceded the writ of prohibition will issue. I think it was without jurisdiction. and that the writ properly issued. I must therefore register my dissent.