STATE OF WYOMING, ex rel B. Blonder,

*Plaintiff and Respondent*

**v.**

F. A. GOODBROD, DISTRICT RECORDER, PUMP-
KIN BUTTES MINING DISTRICT

*Defendant and Appellant.*

(No. 2755; March 5th, 1957; 307 Pac. (2d) 1073)

For the defendant and appellant the cause was submitted upon the brief and oral argument of Michael M. Hoch, Gillette, Wyoming.

For the plaintiff and respondent the cause was submitted upon the brief and oral argument of Frank E. Hays and W. Randall Boyer, both of Lander, Wyoming.

Heard before Blume, C. J., and Harnsberger and Parker, J. J.

## OPINION

Mr. Justice Harnsberger delivered the opinion of the Court.

By petition filed January 12, 1956, plaintiff Blonder, the respondent, sought mandamus to compel defendant Goodbrod, recorder of Pumpkin Buttes Mining District, the appellant, to accept and record certain lode mining claim location certificates. Without any process being served or other notice to appellant, the court on January 13, 1956, heard petitioner ex parte and ordered that its peremptory writ of mandamus issue, directed to the defendant recorder, and command him to accept for filing and to record with the mining district, the plaintiff's lode mining certificates. On January 17, 1956, such a writ was served upon defendant. This was the first notice of any kind given defendant that he was being sued. Defendant acted promptly and filed and served the plaintiff his notice of appeal to this court, where the matter is now properly pending.

The parties substantially seem to agree that the miners in the area did organize as provided by § 57-901, Wyoming Compiled Statutes 1945, elected the defendant as the recorder of the district and adopted certain regulations as follows:

"1. Payment, at the Office of the District Recorder

of an identification card fee of $5.00, before entering the District, for the purpose of prospecting. No claim will be accepted for recording, by the District Recorder, until this fee has been paid.

"2. Payment of a recording fee of $3.00 per claim to the District Recorder, to cover the cost of recording at the district's office, as well as subsequent Recordation at the office of County Clerk, Campbell County, Wyoming. Claims not filed with the district are invalid.

"3. Assignment of a 5% overriding royalty to the surface owner, i.e., the present deeded surface owner, on whose deeded surface the claim lies, at the time of filing. This 5% overriding royalty shall serve as payment of damages suffered by the deeded surface owner, excepting damages caused by the prospector's negligence.

"4. Assignment by suitable contract to the deeded surface owner, of a 12½% participation in any original cash sale, and 12½% of the increase above the previous transacted cash sale, for each sale thereafter, of any claim, or group of claims, by the claimant, or his successor ,at the time of filing for record said claims. This 12½% shall serve as a payment of damages, suffered by the deeded surface owner, excepting damages caused by the prospector's negligence.

"5. Payment of the cost of abstracting the ground on which the claim is situated, shall be paid upon filing with the District any claim which covers any portion of the Entrymans Stockraising Homestead. Subsequent transfers of any claims on record with the District Recorder which effects the abstract of the land on which said claims lie shall be regarded as original abstract costs and must be paid by the person (one line illegible) appear on the record of the District at the time of filing notice of transfer of title. All payments of abstract fees are to be paid to the District Recorder."

Plaintiff paid the $5 identification card fee, entered

into the district area, located lode mining claims, recorded his lode mining location certificates therefor with the county clerk of the county wherein the claims were situate, tendered the district recorder $3 per claim, together with the requisite abstract fee, and attempted to record his lode mining location certificates with the district recorder, but refused to comply with regulations three and four. The defendant recorder refused to accept or to record the plaintiff's certificates unless plaintiff made the assignments called for by regulations three and four, whereupon plaintiff brought this action.

It is claimed (1) there was a denial of due process because defendant lacked opportunity to defend; (2) the court was without jurisdiction because there was no service of process or other notice given defendant before issuance of the writ; (3) plaintiff had an adequate remedy at law; (4) no clear duty was imposed upon defendant.

Some older texts, such as Moses on Mandamus (1867) Ch. 26, p.222, indicate that peremptory writs may not be granted without both parties being heard, while others like Spelling's, 2d Ed., on Injunctions and Other Extraordinary Remedies, § 1683, p. 1448, § 1965, p. 1701, recognize that under some statutes, the giving of notice prior to the issuance of a peremptory writ, is not essential to jurisdiction, thus inferring that under such a statute, the writ may be granted ex parte. This latter view is also expressed in 38 C.J. § 707, p. 929 and in 55 C.J.S. § 343, p. 608, with supporting authorities being cited in each instance. On the other hand, we fail to find in 35 Am. Jur. § 380, p. 118 or elsewhere in that work, any mention of such an exception to the general rule that notice and opportunity to defend must first be given before a peremptory

writ may issue, but it is said in 35 Am. Jur. § 316, p. 69, that the defendant" * * * should be given such notice of the proceedings as the law requires, and failure to give the required notice may prevent the awarding of a peremptory writ."

Section 3-6703, W.C.S. 1945, provides:

"The application for a writ must be by petition, in the name of the state, on the relation of the party applying, and verified by affidavit; and the court may require a notice of the application to be given to the defendant, or may grant an order to show cause why it should not be allowed, or may allow the writ without notice."

Many states have somewhat similar statutes. However, a major point of difference from ours is that most of these statutes have limited the right to grant peremptory writs without notice to those cases where it clearly appears that a valid excuse cannot be given or where there is no room for controversy as to the right, or else they have imposed substantially similar conditions.

While notice and opportunity to defend are unquestionably incident to due process of law, and they are always required where life, liberty or property may be taken, it appears that where statutory authority is given therefor the extraordinary writ of mandamus may be granted sans notice or opportunity to defend and still not violate due process provisions of either State or Federal Constitutions. Cases where the constitutional question has been raised are few, and the decisions, while generally supporting the constitutionality of such statutes, are not completely definite, as is illustrated in the following cases.

In Board of County Commissioners of Sante Fe

County v. New Mexico, Ex Rel Coler, 215 U.S. 296, 30 Sup.Ct.111, 114, 54 L.Ed. 202, 206, the New Mexico statute which authorized the issuance of a peremptory writ of mandamus without notice and without hearing, was considered by the United States Supreme Court. Although the constitutionality of the statute was not directly challenged, the court seemingly gave its tacit sanction to the statute by saying:

"The principal of these objections is that peremptory writs should not have been issued without a hearing, and that there should have been a demand made of the commissioners before suit. As to the first, it may be said that it probably appeared to the district court that the board could have no possible excuse, and in such case a peremptory writ is authorized in the first instance by the laws of the territory."

This Federal decision was discussed in Board of Commissioners v. District Court, 29 N.M. 244, 223 P. 516, 519, 520, where it was pointed out that the Supreme Court had not discussed the proposition as to whether the awarding of the peremptory writ would violate any constitutional right but had merely assumed the statute to be sufficient authority for the action taken. Nevertheless, after analyzing other cases on the subject from Minnesota and Nebraska, the New Mexico court concluded the statute of New Mexico which authorized the granting of a peremptory writ without notice and without opportunity to defend, was constitutional when the writ was directed to compel performance of official duty, but intimated that issuing such a writ without notice or hearing to enforce private or personal property right might be unconstitutional. The case which largely influenced the decision of the New Mexico court was Horton v. State, 60 Neb. 701, 84 N.W. 87, 89, in which the Nebraska court said:

"* * * But while it is doubtless competent for the legislature to authorize the courts in a proper case to coerce official action without notice and an opportunity to the recalcitrant to be heard, we are of opinion that no such power can be lawfully exerted against a private corporation or the officers by which its functions are performed. It is a fundamental principle of justice that before a person can be deprived of his property, or of any valuable right, by the exercise of judicial or other governmental power, he must be warned of the proceeding against him, and be afforded a reasonable opportunity to be heard in his defense."

The distinction thus drawn between those cases where on the one hand a peremptory writ is asked against public officers and on the other hand where the writ is to require performance of private or personal duty affecting property rights, leads to inquiry as to the nature of the respondent's position in this case.

The action was brought against the defendant in his capacity as recorder of the Pumpkin Buttes Mining District and not against him in his personal or private capacity as an individual. The performance or the non-performance of the service required by the writ did not affect nor tend to deprive him of his right to life, liberty or property. The office which he held was one authorized by statute to be created by the mining district, and the purpose of the office was to provide services for a segment of the public. See generally 67 C.J.S. § 2 et seq., p. 97. Without going further into the matter of the recorder's status, we content ouselves with saying that for the purpose of this case, we consider the defendant's position to be so much of public character that any duty he was required to perform as the recorder of the Pumpkin Buttes Mining District could be compelled, in a proper case, by a peremptory writ of mandamus issued without notice or opportunity given to defend, and that the lack of

such notice and opportunity to defend would not violate either State or Federal Constitutions.

But having so decided, there are other things to consider. The first of these is whether the right to issue a peremptory writ without notice and opportunity to defend should be limited to instances where it clearly appears that a valid excuse cannot be given or where there is no room for controversy as to the right, even though our statute does not expressly so provide.

Section 3-6703, W.C.S. 1945, seems to have left to the discretion of the court the matter of dispensing with notice. Where that discretion has been exercised we will not ordinarily interfere unless there is patent abuse. But, if it be found that the court has misapprehended the applicable law which robs the court of authority to grant the particular relief afforded, then we must rectify the error. To ascertain the extent of the court's authority to dispense with notice and thus deny defendant his opportunity to defend, before a peremptory writ may be granted, we must decide if our statute gives an unlimited and unrestricted right in all cases and under any circumstances to forego such notice. This question has inclined us to search for cases where courts may have dealt with a statute similar to ours. In this we have had no success whatever. The only cases found are from states where the statute itself expressly limits the right to grant peremptory writs without notice and hearing to instances where it clearly appears a valid excuse could not be given or where there is no room for controversy as to the right or where other similar limitation has been imposed. The texts are equally silent on the subject. In 55 C.J.S. § 343, p. 608, only the bare statement is made "It (the peremptory writ) issues only when the right thereto has been established * * *". Also in 35 Am.

Jur. § 380, pp. 118, 119, the similarly terse statement is made, "Except in clear cases, the peremptory writ will not be granted until an alternative writ is issued and returned * * *".

In the absence of help from these sources, we turn again to the general law applicable when there is no statute authorizing the writ without notice. As has been noted, except where statute provides to the contrary, notice and opportunity to defend has always been a prerequisite to the issuance of a peremptory writ of mandamus. Then, are we to assume that with the enactment of a statute like ours, the legislature intended to give courts carte blanche to dispense at will and for slight reason with so vital and important a step in the adjudication of disputes between litigants, or is it more reasonable to ascribe to our lawmakers the limited purpose of making it possible to compel action in this summary fashion only in the clearest of cases where it is practically impossible to conceive of there being any valid excuse for non-performance of duty and where delay may result in defeat of right? The principles of fair play and our belief that everyone is entitled to his day in court, with opportunity for timely assertion of his side of a controversy, is too firmly imbedded in our judicial system for us to imply a purpose to abrogate those rights except where the necessity is great and the reasons are apparent, cogent, and compelling. In the case at hand we must therefore ask ourselves, is there a law of this state which clearly requires the elected recorder of a mining district to accept for recording and to record lode mining location certificates, and which leaves the recorder without possible valid excuse for not so doing? Furthermore even should we find that there is such a law, we must also find that the delay resulting from the giving of notice and affording opportunity to defend against

the issuance of the writ, would defeat the plaintiff's right to have the certificates recorded.

Section 57-901, W.C.S. 1945, among other matters, provides that the miners in any mining district may organize and elect a recorder and may also make regulations, not in conflict with the laws of the United States or with the laws of this state, governing the manner of recording a mining claim. It also authorizes the district to regulate the fees to be charged for recording location certificates. The pertinent portion of the only other statute which we have relating to the recording of lode mining location certificates is § 57-914, W.C.S. 1945, and is as follows:

"A discoverer of any mineral lead, lode, ledge, or vein shall, within sixty days from the date of discovery, cause claim to be recorded in the office of the county clerk and ex-officio register of deeds of the county within which such claim may exist, by a location certificate which shall contain the following facts: * * *".

So it appears that notwithstanding our law, as it existed at the time this suit was filed, did make provision for the election of a recorder of mining districts and for regulation of fees to be charged for recording location certificates, there was no statutory provision which required that the location certificates should be filed with or be recorded by a district recorder. True, the statute did authorize the organized district to make regulations governing the manner of recording lode mining location certificates, but this right of regulation could not be exercised in conflict with the laws of either the United States or the laws of the State of Wyoming. It may be that if the only legislation we have had on the subject of recording these certificates was § 57-914, W.C.S. 1945, as it then existed, it might be reasoned that a requirement by regulation for the recording of the certificates with the mining district

recorder, in addition to recording the same with the county clerk, would not present any conflict with our laws but would only have permissibly imposed an additional duty upon the locator. However, when we examine the history of § 57-914, W.C.S. 1945, we find that this statute was originally enacted as Chapter 40, § 15, Laws of Wyoming, 1888, in the following language:

"A discoverer of any mineral lead, lode, ledge or vein shall, *within thirty days of the date of the discovery, record such claim with the recorder of the mining district in which it is situated, if such district be organized, and shall within ninety days* from the date of discovery cause such claim to be recorded within the office of the county clerk and ex-officio register of deeds of the county within which such claim may exist, by a location certificate, which shall contain the following facts: * * *". (Emphasis supplied.)

By the Session Laws of Wyoming, 1895, Ch. 108, § 1, the law was amended by omitting the portion referring to recording with the recorder of the mining district and by reducing the time for recording with the county clerk and ex officio register of deeds from ninety to sixty days.

We are disposed to credit the legislature with having some purpose and good reasons for making the change, deleting the requirement of recording a certificate with the district recorder, whether that reason was—as has been suggested—that in the earlier days it seemed expedient to provide a place of recording in closer proximity to the scene of the mining location than was generally available with respect to the county clerk's office located at the county seat, but as time went on, the provision for such recording was found to be unnecessary or unwise. At any rate, the presence at one time in our laws of the requirement and

its absence now, would seem to indicate a legislative purpose that but a single recording of the certificates in the usual office of record—the county clerk and ex officio register of deeds—shall be made. Any purported regulation of a district to the contrary was therefore in conflict with our law and was unavailing to impose a duty upon the recorder of the district to record such certificates. This makes the granting of a writ of mandamus to compel a recorder of a mining district to record a lode mining location certificate in any case, improper and unauthorized by the laws of this state as they existed at the time this action was brought, and the action of the lower court must therefore be reversed. These conclusions are fortified by the late action of the Thirty Fourth Legislature, as §§ 57-901 and 57-902, W.C.S. 1945, were repealed by House Enrolled Act. 56. In view of this holding it is unnecessary to discuss the other points raised by the appellant.

In order that further misunderstanding may be avoided and in line with our holdings herein, we might also say that the recording of lode mining location certificates in the proper county clerk's office will of itself suffice to give the locator and discoverer all protections which are entailed by making them of record.

Reversed.