2005 WY 100

The STATE of Wyoming, ex rel., Robert Ernest BUNN, and County Title Agency, Inc., a Wyoming corporation, Appellants (Petitioners),

v.

Julie FREESE, in her official capacity as County Clerk for the County of Fremont, State of Wyoming, Appellee (Respondent).

No. 05–28.

Supreme Court of Wyoming.

Aug. 23, 2005.

Edward G. Luhm of Scott, Shelledy and Luhm, P.C., Worland, Wyoming, for Appellants.

James Whiting, Deputy Fremont County Attorney, Lander, Wyoming, for Appellee.

Before HILL, C.J., and GOLDEN, KITE, VOIGT, and BURKE, JJ.

HILL, Chief Justice.

[¶ 1]  Appellant, the State of Wyoming ex rel. Robert Ernest Bunn and County Title Agency, Inc. (Bunn), seeks review of an order of the district court that denied Bunn's Petition for Writ of Mandamus. Bunn asked the district court to order Appellee, Julie Freese, County Clerk of Fremont County (Clerk), to file a document which she observed to be a document not eligible for recording under the governing Wyoming statute. The district court declined to issue the writ. We affirm.

### ISSUES

[¶ 2]  Bunn raises this single issue:

Whether a county clerk [may] refuse to record a previously recorded document to which has been added additional language?

The Clerk styles the issue thus:

Did the district court abuse its discretion by refusing to order the county clerk to record an altered document?

### FACTS AND PROCEEDINGS BELOW

[¶ 3]  Bunn is the President and Chief Executive Officer of County Title Agency, Inc. The purpose of that business is to act as an agent for title insurance companies and to assist in real estate closings, title searches, and other business transactions involving real property. On May 5, 2004, Bunn presented a document for recording and the Clerk did record it. That document looked about like this:

AGREEMENT WITH PRIOR LIEN-HOLDER

UNITED STATES DEPARTMENT OF AGRICULTURE

Form RD 1927–8     FORM APPROVED
(Rev.1–02)         OMB NO. 0575–0147

*Position 5*

WHEREAS _____ First Interstate Bank (called the "Mortgagees") is the holder of a certain Mortgage (called the "Security Instrument") recorded in Book No. _____ Page ____, Of the Records of Fremont County;

On May 6, 2004, Bunn offered the same document for recording, with the document number added. The Clerk would not record it. It looked about like this:

\* \* \* **RERECORDED TO ADD DOCUMENT NUMBER**

AGREEMENT WITH PRIOR LIEN-HOLDER

UNITED STATES DEPARTMENT OF AGRICULTURE

Form RD 1927–8     FORM APPROVED
(Rev.1–02)         OMB NO. 0575–0147

*Position 5*

WHEREAS _____ First Interstate Bank (called the "Mortgagees") is the holder of a certain Mortgage (called the "Security Instrument") recorded in Book No. _____ Page ____, Of the Document No. 12563B Records of Fremont County;

[¶ 4]  On May 20, 2004, the Clerk returned the second document to Bunn with a notation that "We cannot re-record the same document *see attached* letter." The attached letter, with a date of March 5, 2004, contained this information:

TO:  All lending institutions, attorneys, title companies

FROM:  Julie A Freese, County Clerk

RE:  Recording of Corrective Documents

December 3, 2002, I issued a memorandum regarding a change in how our office would handle the recording of corrective documents. Following a work session with the

county attorney's office and the county assessor's office, we determined that in order to correct any recorded document, the county clerk's office will need to have the following:

1) A new document with the word "corrected" in the title of the document. (i.e., Corrected Warranty Deed)

2) A clear message of the correction. (i.e., recording to correct legal description. A reference to previous recording information would also make the record more clear).

3) Original, notarized signatures of the grantors.

The basis for this determination is W.S. 34–1–119 "... Only instruments which are originally signed documents or properly certified or authenticated copies thereof may be properly recorded...." The county clerk office's acceptance of corrective deeds as we have recorded in the past, without proper execution, may not be sufficient to meet the requirements of state law to transfer the ownership of property.

Effective immediately, the county clerk's office will reject any document without original, notarized signatures.

[¶ 5] After conducting a hearing on November 15, 2004, the district court issued an order on December 28, 2004, wherein it concluded: "The document with the language '* * *RE–RECORDED TO ADD DOCUMENT NUMBER' and 'Document No.

1252638' is not an original signed document, properly certified or authenticated copy thereof pursuant to W.S. § 34–1–119, and therefore should not be recorded."

[¶ 6] On January 7, 2005, Bunn filed a notice of appeal in the district court seeking this Court's review of the district court's order.

## DISCUSSION

[¶ 7] Bunn contends that the district court misconstrued Wyo. Stat. Ann. § 34–1–119 (LexisNexis 2005). It provides:

**§ 34–1–119. Duties of county clerk generally.**

The county clerk of each county within this state shall receive and record at length all deeds, mortgages, conveyances, patents, certificates and instruments left with him for that purpose, and he shall endorse on every such instrument the day and hour on which it was filed for record. The county clerk shall not record any document until the address of the grantee, mortgagee or assignee of the mortgagee is furnished to the county clerk, but this requirement shall not affect the validity of the recording of any instrument. **Only instruments which are the *originally signed documents* or properly certified or authenticated copies thereof may be properly recorded. A document is properly certified if in compliance with Rule 902[1] of the Wyoming Rules of Evidence**

---

1. **Rule 902. Self-authentication.**

    (a) Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following:

    (1) *Domestic Public Documents Under Seal.*—A document bearing a seal purporting to be that of the United States, or of any state, district, commonwealth, territory, or insular possession thereof, or the Panama Canal Zone, or the Trust Territory of the Pacific Islands, or of a political subdivision, department, officer, or agency thereof, or an Indian tribe recognized by the United States, and a signature purporting to be an attestation or execution;

    (2) *Domestic Public Documents Not Under Seal.*—A document purporting to bear the signature in his official capacity of an officer or employee of any entity included in paragraph (1) hereof, having no seal, if a public officer having a seal and having official duties in the district or political subdivision of the officer or employee certifies under seal that the signer

has the official capacity and that the signature is genuine.

    (3) *Foreign Public Documents.*—A document purporting to be executed or attested in his official capacity by a person authorized by the laws of a foreign country to make the execution or attestation, and accompanied by a final certification as to the genuineness of the signature and official position (A) of the executing or attesting person, or (B) of any foreign official whose certificate of genuineness of signature and official position relates to the execution or attestation or is in a chain of certificates of genuineness of signature and official position relating to the execution or attestation. A final certification may be made by a secretary of embassy or legation, consul general, consul, vice consul, or consular agent of the United States, or a diplomatic or consular official of the foreign country assigned or accredited to the United States. If reasonable opportunity has been given to all parties to in-

**or other applicable rule or statute.** [Emphasis and footnote added.]

[¶ 8] Bunn asserts that the central issue in his appeal is the construction of this statute. Of course, our usual standard of review applies to such a process. *See In re Loberg,* 2004 WY 48, ¶ 5, 88 P.3d 1045, ¶ 5 (Wyo. 2004).[2] In addition, we note that the office of the writ of mandamus is well defined by statute and usage. "Mandamus is a writ issued in the name of the state to an inferior tribunal, a corporation, board or person commanding the performance of an act which the law specially enjoins as a duty resulting from an office, trust or station." *See* Wyo. Stat. Ann. §§ 1–30–101 –118 (LexisNexis 2005); *also see In the Matter of the Board of County Commissioner, Sublette County,* 2001 WY 91, ¶¶ 10–11, 33 P.3d 107, ¶¶ 10–11 (Wyo. 2001); and *see generally State ex rel. Blon-*

vestigate the authenticity and accuracy of official documents, the court may, for good cause shown, order that they be treated as presumptively authentic without final certification or permit them to be evidenced by an attested summary with or without final certification.

(4) *Certified Copies of Public Records.*—A copy of an official record or report or entry therein, or of a document authorized by law to be recorded or filed and actually recorded or filed in a public office, including data compilations in any form, certified as correct by the custodian or other person authorized to make the certification, by certificate complying with paragraph (1), (2), or (3) of this rule or complying with any Act of Congress or rule prescribed by the Supreme Court pursuant to statutory authority.

(5) *Official Publications.*—Books, pamphlets, or other publications purporting to be issued by public authority.

(6) *Newspapers and Periodicals.*—Printed materials purporting to be newspapers or periodicals.

(7) *Trade Inscriptions and the Like.*—Inscriptions, signs, tags, or labels purporting to have been affixed in the course of business and indicating ownership, control, or origin.

(8) *Acknowledged Documents.*—Documents accompanied by a certificate of acknowledgment executed in the manner provided by law by a notary public or other officer authorized by law to take acknowledgments.

(9) *Commercial Paper and Related Documents.*—Commercial paper, signatures thereon, and documents relating thereto to the extent provided by general commercial law.

(10) *Presumptions Under Acts of Congress or Statutes of Wyoming.*—Any signature, document, or other matter declared by Act of Congress or statutes of Wyoming to be presumptively or prima facie genuine or authentic.

(b) *Lack of Record.*—A written statement that after diligent search no record or entry of a specified tenor is found to exist in the records designated by the statement, authenticated as provided in subdivisions (a)(1) and (a)(2) of this rule in the case of a domestic record, or complying with the requirements of subdivision (a)(3) of this rule for a summary in the case of a foreign record, is admissible as evidence that the records contain no such record or entry.

(c) *Other Proof.*—This rule does not prevent the proof of official records or of entry or lack of entry therein by any other method authorized by law.

(d) *Seal Dispensed With.*—In the event any office or officer, authenticating any documents under the provisions of this rule, has no official seal, and so certifies, then authentication by seal is dispensed with.

2.    Our standard of review with respect to the construction of statutes is well known. In interpreting statutes, our primary consideration is to determine the legislature's intent. All statutes must be construed in pari materia and, in ascertaining the meaning of a given law, all statutes relating to the same subject or having the same general purpose must be considered and construed in harmony. Statutory construction is a question of law, so our standard of review is de novo. We endeavor to interpret statutes in accordance with the legislature's intent. We begin by making an inquiry respecting the ordinary and obvious meaning of the words employed according to their arrangement and connection. We construe the statute as a whole, giving effect to every word, clause, and sentence, and we construe all parts of the statute in pari materia. When a statute is sufficiently clear and unambiguous, we give effect to the plain and ordinary meaning of the words and do not resort to the rules of statutory construction. *Wyoming Board of Outfitters and Professional Guides v. Clark,* 2001 WY 78, ¶ 12, 30 P.3d 36, ¶ 12 (Wyo.2001); *Murphy v. State Canvassing Board,* 12 P.3d 677, 679 (Wyo.2000). Moreover, we must not give a statute a meaning that will nullify its operation if it is susceptible of another interpretation. *Billis v. State,* 800 P.2d 401, 413 (Wyo.1990) (citing *McGuire v. McGuire,* 608 P.2d 1278, 1283 (Wyo.1980)).

Moreover, we will not enlarge, stretch, expand, or extend a statute to matters that do not fall within its express provisions. *Gray v. Stratton Real Estate,* 2001 WY 125, ¶ 5, 36 P.3d 1127, ¶ 5 (Wyo.2001); *Bowen v. State, Wyoming Real Estate Commission,* 900 P.2d 1140, 1143 (Wyo.1995). *Board of County Commissioners of Teton County v. Crow,* 2003 WY 40, ¶¶ 40–41, 65 P.3d 720, ¶¶ 40–41 (Wyo.2003) (some internal citations omitted).

*der v. Goodbrod,* 77 Wyo. 126, 307 P.2d 1073, 1077–78 (1957).

[¶ 9] The essence of Bunn's contention is that the Clerk has a duty to file a document such as that he offered which "the law specially enjoins as a duty resulting from an office...." For this proposition he relies on Wyo. Stat. Ann. § 18–3–402(a)(vi) (LexisNexis 2005). That subsection provides that a county clerk shall:

(vi) Have custody and keep all books, records, deeds, maps, papers and copies thereof deposited or kept in his office as required by law. All deeds, mortgages, and other instruments in writing authorized by law to be recorded or filed in his office and left in his office shall be:

(A) Recorded in distinct handwriting or by typing, photostating, photographing, printing or other reproduction, either in whole or in part, in suitable books; or

(B) Recorded on microfilm, microcards or other permanent record retention medium. All reproduction processes shall be instituted and used pursuant to W.S. 9–2–413. Maps may either be recorded as herein provided or if the copying is unlikely to provide a satisfactory record, the county clerk may keep the originals or tracings thereof, undamaged and unfolded and make prints available for public use.

[¶ 10] Furthermore, Bunn contends that both the Clerk and the district court have misconstrued Wyo. Stat. Ann. § 34–1–119. He contends that a reading of Wyo. Stat. Ann. §§ 34–1–113, 34–1–114, 34–1–115, 34–1–116, and 34–1–126, give a meaning to the phrase "originally signed document" that belies the position taken by the Clerk. We simply cannot agree. Even if we were to rely only on dictionary definitions, we could not agree with Bunn's position. "Originally," means: "*adv* 1 *archaic* : by origin or derivation : from the first : INHERENTLY ... 2: in the beginning: in the first place: INITIALLY, PRIMARILY...." Webster's Third New International Dictionary 1592 (1986). We conclude that the word "originally," as used in the phrase "originally signed document" takes its meaning from the word original as it is used in W.R.E. 1001(3): "(3) *Original.*— An 'original' of a writing or recording is the writing or recording itself or any counterpart intended to have the same effect by a person executing or issuing it...." Thus, we hold that the district court did not err as a matter of law in denying the writ of mandamus. We further note that if we accepted Bunn's argument at face value, then it would open the door to the filing of mere "copies" of documents not intended to be eligible for "recording" under the recording statutes. Finally, we note that Bunn's argument was not supported by pertinent authority nor was he able to articulate the manner in which he was harmed or damaged by the Clerk's action/inaction. It appears that he can readily obtain an authenticated or certified copy of the document at issue and, after fully complying with the Clerk's March 5, 2004 letter, record it.

## CONCLUSION

[¶ 11] The district court's order denying the writ of mandamus is affirmed.