**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2013-NMCA-053**

**Filing Date: March 11, 2013**

**Docket No. 31,910**

**DAVID LUGINBUHL,**

    **Petitioner-Appellant,**

**v.**

**CITY OF GALLUP,**
**GALLUP POLICE DEPARTMENT,**

    **Respondents-Appellees.**

**APPEAL FROM THE DISTRICT COURT OF MCKINLEY COUNTY**
**Robert Aragon, District Judge**

Vega Lynn Law Offices, LLC
Rosario D. Vega Lynn
Albuquerque, NM

for Appellant

Mason and Isaacson, PA
Thomas Lynn Isaacson
Gallup, NM

for Appellee

**OPINION**

**ZAMORA, Judge.**

**{1}**     Petitioner David Luginbuhl appeals from the district court's denial of his petition for injunctive relief seeking to block the City of Gallup (City) and the Gallup Police Department (GPD) from forcing him to resolve his employment dispute through arbitration. Petitioner argues that because he is not a dues-paying member of the Gallup Police Officer's Association (Union), he should not be forced to abide by the arbitration clause of the Collective Bargaining Agreement (CBA) between the Union, which represents members of

1

the GPD, and the City, but rather that he should be allowed to pursue relief immediately in the district court to seek redress for his dismissal from the GPD. We disagree, and we affirm the district court for the reasons that follow.

## BACKGROUND

**{2}**    Petitioner was a full-time police officer for the GPD from October 27, 2007, until his termination on June 8, 2011. During his time of employment he chose not to join the Union, did not pay dues, and never sought the assistance of the Union.

**{3}**    The City recognized the Union "as the exclusive collective bargaining representative for the regular full-time non-probationary sworn police officers (Certified), Patrolman First Class (PFC), and Sergeants." Despite his decision to decline union membership, Petitioner acknowledges that he was a regular full-time, non-probationary, sworn police officer employed by the GPD and a member of the bargaining unit covered by the CBA.

**{4}**    The CBA contains all issues introduced for negotiation and agreed by and between the Union and the City. There were forty-two matters negotiated and reduced to writing, including but not limited to annual clothing allowances for uniforms; rules regarding firearms; time off and various types of leave, including holidays; vacation and holiday benefits; health coverage and salary compensation; overtime and extra-duty assignments and pay; layoff and recall procedures; the filling of vacancies; the disciplinary process; and a grievance and appeal process. The CBA took effect in November 2008 and remained in effect until November 2011, and was the operative agreement at the time of Petitioner's June 2011 dismissal and implementation of the grievance process. The grievance procedure begins when an employee "file[s] a written grievance within seven (7) days of the date the employee knew or should have known of the issue that generated the disciplinary action."

**{5}**    Petitioner initiated the grievance procedure to challenge his termination. He followed the first three steps of the grievance process: (1) a meeting between the employee and his or her supervisor, (2) a meeting between the employee and the police chief, and (3) a meeting with the city manager to help resolve the dispute. However, he elected not to follow through with the fourth and final step: arbitration. Instead, claiming he was not bound by the CBA because of his non-union status, he filed his petition in district court seeking injunctive relief. A hearing was held on December 20, 2011, at the end of which the petition was denied, with a written order following on January 4, 2012. This appeal followed, and we address the question of whether the district court properly denied the petition.

## DISCUSSION

### I.    Standard of Review

**{6}**    "Any request for injunctive relief is directed to the sound discretion of the [district]

court." *Cunningham v. Gross*, 102 N.M. 723, 725, 699 P.2d 1075, 1077 (1985). "When a [district] court misapprehends the law, the court abuses its discretion." *Smart v. Carpenter*, 2005-NMCA-056, ¶ 6, 139 N.M. 524, 134 P.3d 811; *see Aragon v. Brown*, 2003-NMCA-126, ¶ 9, 134 N.M. 459, 78 P.3d 913 (stating that a district court abuses its discretion "when it applies an incorrect standard, incorrect substantive law, or its discretionary decision is premised on a misapprehension of the law"). A district court's conclusions of law are reviewed de novo. *Smart*, 2005-NMCA-056, ¶ 7. To the extent we address constitutional issues, our review is de novo. *State v. Pacheco*, 2007-NMSC-009, ¶ 12, 141 N.M. 340, 155 P.3d 745.

## II.     Writ of Prohibition

**{7}**     We begin by noting that Petitioner sought a writ of prohibition from the district court as well as a temporary restraining order and preliminary injunction. A district court may issue a writ of prohibition "provided, that no such writs shall issue directed to judges or courts of equal or superior jurisdiction." N.M. Const. art. VI, § 13; *see State v. Valerio*, 2012-NMCA-022, ¶ 16, 273 P.3d 12 ("District courts have the authority . . . to issue writs of prohibition to courts of inferior jurisdiction."), *cert. denied*, 2012-NMCERT-001, 291 P.3d 598. "It is well established that the extraordinary writ of prohibition is generally available only in cases where there is no adequate remedy at law." *Valerio*, 2012-NMCA-022, ¶ 23; *see* 17 McQuillin Mun. Corp. § 49:80, at 556 (3d ed. 2004) (noting the "fundamental fact that the purpose of the writ is to prevent the lower body from assuming jurisdiction with which it is not legally vested, or where having jurisdiction, it has exceeded its legitimate powers"); *State ex rel. Wells v. Hough*, 91 S.W. 905, 915 (Mo. 1906) ("Its chief function is to keep inferior courts within the orbit of their rightful jurisdiction.").

**{8}**     The City contends that the district court was without jurisdiction to grant the request for a writ of prohibition because the municipality is not an "inferior court" as contemplated by the constitutional provision. As discussed below, we decide that no injunctive relief in any form—whether it be a writ of prohibition, temporary restraining order, or a preliminary injunction—is proper in this case, because arbitration is the proper forum for Petitioner's grievance. Therefore, we need not address the question of whether a writ of prohibition may issue from a district court to a municipality or an arm of a municipality.[1] We now proceed to the issues raised by Petitioner's appeal.

## III.     Whether Petitioner is Subject to the Public Employee Bargaining Act

**{9}**     Petitioner contends that he filed a grievance according to the City's personnel rules and regulations for non-union employees, and not a grievance pursuant to the CBA. The

---

[1]Petitioner did not join an arbitrator as a party to his petition for a writ of prohibition, so we also need not decide whether an arbitrator or arbitration proceeding stands as an "inferior court" for purposes of a district court issuing a writ of prohibition.

3

primary difference between the two processes is that the CBA requires arbitration. Public employers and employees in New Mexico are also subject to the Public Employee Bargaining Act (PEBA), NMSA 1978, §§ 10-7E-1 to -26 (2003, as amended through 2005). Whether the Petitioner has a duty to arbitrate depends on whether or not he falls within the strictures of the PEBA.

**{10}** The PEBA identifies the parties to a collective bargaining agreement. A "public employer" is defined as "the state or a political subdivision thereof," and a "public employee" is "a regular non[-]probationary employee of a public employer." Section 10-7E-4(R), (S) (internal quotation marks omitted). Petitioner is a regular non-probationary employee of the City, a municipal corporation of the State of New Mexico, as a member of the GPD. An "appropriate bargaining unit" is defined as "a group of public employees designated by the board or local board for the purpose of collective bargaining." Section 10-7E-4(A) (internal quotation marks omitted). As noted above, Petitioner concedes that, as a regular full-time sworn police officer with the GPD, he was a member of the bargaining unit.

**{11}** A "labor organization" is defined as "an employee organization, one of whose purposes is the representation of public employees in collective bargaining," and a labor organization is an "exclusive representative" when it "has the right to represent all public employees in an appropriate bargaining unit for the purposes of collective bargaining." Section 10-7E-4(I), (L) (internal quotation marks and citation omitted). The City recognized the Union as the exclusive bargaining representative. The City and the Union[2] entered into a [CBA] that was in effect from November 2008 to November 2011. As required by the PEBA, the CBA contained a grievance procedure. Section 10-7E-17(F) states:

> An agreement shall include a grievance procedure to be used for the settlement of disputes pertaining to employment terms and conditions and related personnel matters. The grievance procedure shall provide for a final and binding determination. The final determination shall constitute an arbitration award within the meaning of the Uniform Arbitration Act [(UAA)] [NMSA 1978, §§ 44-7A-1 to 28 (2001)]; such award shall be subject to judicial review pursuant to the standard set forth in the [UAA]. The costs of an arbitration proceeding conducted pursuant to this subsection shall be shared equally by the parties.

**{12}** Section 34 of the CBA sets forth the grievance and appeal procedures and the four-step grievance process, which includes the arbitration provision. The arbitration provision states that the "decision of the [a]rbitrator shall be final and binding on both the [p]arties."

**{13}** We conclude that Petitioner is a public employee, working for a public employer, and

---

[2] The Union is an affiliate of the Fraternal Order of Police, and the McKinley County Lodge No. 7 Fraternal Order of Police.

he is therefore subject to the PEBA, the November 2008 to November 2011 CBA, and the four-step grievance procedure provided for within that CBA, which includes arbitration, prior to seeking judicial review.

**IV.      Whether the Arbitration Clause Is Unsupported by Consideration or Vague**

**{14}**    As a threshold matter, Petitioner argues that the arbitration agreement is unenforceable because it is unsupported by consideration.  He also contends that the arbitration clause at issue is impermissibly vague insofar as it is "unclear and too broad" and fails to satisfy the United States Supreme Court's requirement that the agreement to arbitrate "must be clear and unmistakable." *Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70, 80 (1998).

**A.      Consideration**

**{15}**    "A legally enforceable contract is a prerequisite to arbitration under the [UAA], and without such a contract, the parties will not be forced to arbitrate." *Strausberg v. Laurel Healthcare Providers, LLC*, 2012-NMCA-006, ¶ 15, 269 P.3d 914, *cert. granted*, 2012-NMCERT-001, 291 P.3d 599.  For such a contract to be legally enforceable, New Mexico courts require evidence of an "offer, acceptance, consideration[,] and mutual assent." *Piano v. Premier Distrib. Co.*, 2005-NMCA-018, ¶ 6, 137 N.M. 57, 107 P.3d 11 (internal quotation marks and citation omitted).  "Consideration consists of a promise to do something that a party is under no legal obligation to do or to forbear from doing something he has a legal right to do." *Id*. (internal quotation marks and citation omitted).

**{16}**    Arbitration clauses in employment contracts have been widely held to include consideration on the part of an employee from the inception of the contract. *See generally,* Stephen F. Befort, *Unilateral Alteration of Public Sector Collective Bargaining Agreements and the Contract Clause*, 59 Buff. J. Int'l L.1, 50 (2011). Such arbitration clauses are "reciprocal in nature" and "courts treat the employee's promise to arbitrate as supported by the employer's promise to do the same."  Rachel Arnow-Richman, *Cubewrap Contracts: The Rise of Delayed Term, Standard Form Employment Agreements*, 49 Ariz L. Rev. 637, 649 (2007).  The Wyoming Supreme Court has declared that benefits found in employment handbooks are supported by consideration which "consists of the benefit of an orderly, cooperative and loyal work force." *Leithead v. Am. Colloid Co.*, 721 P.2d 1059, 1062-63 (Wyo. 1986).  The United States Supreme Court has characterized consideration in a CBA as "the arbitration agreement being the 'quid pro quo' for the agreement not to strike." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 578 n.4 (1960).

**{17}**    Courts in other jurisdictions also find disparate ways to characterize consideration in an employment contract arbitration clause. *See, e.g.*, *Oblix, Inc. v. Winiecki*, 374 F.3d 488, 491 (7th Cir. 2004) (stating a worker's salary is consideration for an arbitration clause); *Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1108 (9th Cir. 2002) (stating that an employer's "promise to be bound by the arbitration process itself serves as adequate

consideration"); *Barker v. Golf U.S.A., Inc.*, 154 F.3d 788, 792 (8th Cir. 1998) (stating that "consideration for a contract as a whole covers the arbitration clause"); *Gibson v. Neighborhood Health Clinics, Inc.*, 121 F.3d 1126, 1131 (7th Cir. 1997) (stating that "consideration for one party's promise to arbitrate is the other party's promise to do the same"); *In re Halliburton Co.*, 80 S.W.3d 566, 569 (Tex. 2002) (same); *Walters v. A.A.A. Waterproofing, Inc.*, 85 P.3d 389, 392 (Wash. Ct. App. 2004) (same). By contrast, a lack of consideration for an arbitration agreement is most commonly found when the employer has the unilateral right to modify the arbitration clause, which is not present in the case before us. *See* Richard A. Bales, *Contract Formation Issues in Employment Arbitration*, 44 Brandeis L.J. 415, 450-51 (2006).

**{18}** Here, we note that the parties to the CBA mutually agreed to arbitrate grievances, and we presume that the CBA was negotiated in good faith and comported with the PEBA's stated purpose "to promote harmonious and cooperative relationships between public employers and public employees." Section 10-7E-2. Furthermore, as the City points out, Petitioner, as an undisputed member of the bargaining unit, enjoyed the benefits of the CBA's provisions, including increased compensation for serving as a member of the emergency response team, vacation and holiday pay, a clothing allowance, and seniority rights. We adopt the reasoning of other courts that find an arbitration clause in a validly negotiated CBA does not fail for lack of consideration, and we conclude that the CBA at issue was supported by adequate consideration.

**B.     Vagueness**

**{19}** We are guided by the principle that a reviewing court "should view with suspicion an attempt to persuade it to become entangled in the construction of the substantive provisions of a labor agreement, even through the back door of interpreting the arbitration clause, when the alternative is to utilize the services of an arbitrator." *United Steelworkers*, 363 U.S. at 585. In the case before us, the arbitration clause applies to "any written dispute which may arise between the [p]arties regarding disciplinary actions resulting in written reprimands through dismissal or a violation of this agreement." After following the initial three-step process of meeting with the supervisor, police chief, and city manager, a grievant may then proceed to the fourth and final step, arbitration:

> If the employee is not satisfied with the City Manager's decision, the [Union] and the employee (grievant) may within seven (7) days of the City Manager's decision, give notice to the City that the issue needs to [be] resolved by arbitration.
> **Arbitration** - The arbitration proceeding shall be conducted by an experienced labor management relations arbitrator to be selected by the City and the [Union]. The Federal Mediation and Conciliation Service (FMCS) shall be requested by the [p]arties to provide a list of eligible arbitrator names. . . . The decision of the Arbitrator shall be final and binding on both the [p]arties. The cost of the arbitration will be borne equally by both

[p]arties.

**{20}**     Petitioner argues that the arbitration clause lacks "explicit language in the CBA" regarding the type of grievances that are subject to binding arbitration. We disagree. The four-step grievance process culminating in arbitration covers "any written dispute" between a member of the bargaining unit and the employer, and the arbitration process itself is set forth in detail. As stated previously, the PEBA mandates that CBAs require binding arbitration to settle disputes.

**{21}**     In addition to the statutory requirement of binding arbitration, New Mexico courts have encouraged arbitration in settling disputes. *See Durham v. Guest*, 2009-NMSC-007, ¶ 32, 145 N.M. 694, 204 P.3d 19 (stating that "New Mexico has a strong public policy in favor of arbitration as a form of dispute resolution"); *Clay v. N.M. Title Loans, Inc.*, 2012-NMCA-102, ¶ 6, 288 P.3d 888 (calling arbitration "a highly favored form of dispute resolution" (internal quotation marks and citation omitted)), *cert. denied*, 2012-NMCERT-009, 296 P.3d 1207. We recently noted that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Clay*, 2012-NMCA-102, ¶ 7 (internal quotation marks and citation omitted). We have also encouraged courts to broadly construe arbitration provisions. *Felts v. CLK Mgmt., Inc.*, 2011-NMCA-062, ¶ 22, 149 N.M. 681, 254 P.3d 124 (stating that "when the parties agree to arbitrate any potential claims or disputes arising out of their relationships by contract or otherwise, the arbitration agreement will be given broad interpretation unless the parties themselves limit arbitration to specific areas or matters" (alteration, internal quotation marks, and citation omitted)), *cert. granted*, 2011-NMCERT-006, 150 N.M. 763, 266 P.3d 632. "A [CBA] should be held to include the right to arbitrate a specific grievance not expressly excluded by its terms, and doubt should be resolved in favor of arbitration." *Jones v. Int'l Union of Operating Eng'rs*, 72 N.M. 322, 331, 383 P.2d 571, 577 (1963); *see AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (reinforcing the idea of a "presumption of arbitrability" and concluding that "[d]oubts should be resolved in favor of coverage" (internal quotation marks and citation omitted)). When interpreting an arbitration clause "courts will apply the plain meaning of the contract language as written in interpreting terms of a contract." *Christmas v. Cimarron Realty Co.*, 98 N.M. 330, 332, 648 P.2d 788, 790 (1982).

**{22}**     Giving a broad reading to the arbitration clause at issue and indulging the presumption in favor of arbitrability, we find unavailing Petitioner's contention that the clause is vague or unclear. The settlement of any written dispute brought by a member of the bargaining unit, under the plain language of both the CBA and the PEBA, is to culminate in binding arbitration. By engaging in the grievance process, Petitioner initiated a written dispute, and like all members of the bargaining unit he is covered by the contract's grievance procedure. The CBA's arbitration clause is not vague or uncertain in its application.

**{23}**     Although we have concluded that Petitioner is a member of the bargaining unit,

subject to the PEBA, the CBA, and its arbitration clause, it is important that we address Petitioner's contention that, as a non-union member, he is exempt from the CBA's grievance procedure and thus is being denied an adequate remedy at law.

**V.      Application of the Arbitration Clause to a Non-Union Member of the Bargaining Unit**

{24}      Petitioner argues that because he is not a member of the Union he is not bound by the CBA's arbitration clause. He further contends that requiring him to arbitrate his grievance rather than proceed to district court denies him his right to seek redress in the courts. We take those arguments in order.

**A.      Whether Petitioner is Bound by the Arbitration Clause**

{25}      "Parties contracting to resolve disputes by arbitration are bound by their agreement. The terms of the agreement define the scope of the jurisdiction, conditions, limitations[,] and restrictions on the matters to be arbitrated." *Christmas*, 98 N.M. at 332, 648 P.2d at 790 (citation omitted). "Thus, when parties have agreed to arbitrate, the courts must compel arbitration." *Santa Fe Techs., Inc. v. Argus Networks, Inc.*, 2002-NMCA-030, ¶ 51, 131 N.M. 772, 42 P.3d 1221.

{26}      In the case before us, the CBA defines a bargaining unit employee as "an employee who occupies a position within the department that has been identified as appropriate for inclusion in the bargaining unit and who has completed the required twelve (12) month probationary period." The PEBA defines an "appropriate bargaining unit" as "a group of public employees designated by the [public employee labor relations] board or local board for the purpose of collective bargaining." Section 10-7E-4(A) (internal quotation marks omitted). The PEBA further dictates that "[a]ppropriate bargaining units shall be established on the basis of occupational groups or clear and identifiable communities of interest in employment terms and conditions and related personnel matters among the public employees involved. Occupational groups shall generally be identified as blue-collar, secretarial clerical, technical, professional, paraprofessional, *police*, fire[,] and corrections." Section 10-7E-13(A) (emphasis added).

{27}      The PEBA further provides that:

A.      A labor organization that has been certified by the board or local board as representing the public employees in the appropriate bargaining unit shall be the exclusive representative of all public employees in the appropriate bargaining unit. The exclusive representative shall act for all public employees in the appropriate bargaining unit and negotiate *a [CBA] covering all public employees in the appropriate bargaining unit*. The exclusive representative shall represent the interests of all public employees in the appropriate bargaining unit without discrimination or

8

regard to membership in the labor organization.

> B. *This section does not prevent a public employee, acting individually, from presenting a grievance without the intervention of the exclusive representative.* At a hearing on a grievance brought by a public employee individually, the exclusive representative shall be afforded the opportunity to be present and make its views known. An adjustment made shall not be inconsistent with or in violation of the [CBA] then in effect between the public employer and the exclusive representative.

Section 10-7E-15(A), (B) (emphasis added). Finally, the PEBA states that a public employee shall not "refuse or fail to comply with a collective bargaining or other agreement with the public employer." Section 10-7E-20(D).

**{28}** Petitioner's contention that, as a non-union member of the bargaining unit, he is not bound by the agreement to arbitrate disputes is refuted by the plain language of the PEBA. It is also at odds with the long-standing reasoning of the United States Supreme Court, which has stated: "The labor organization chosen to be the representative of the craft or class of employees is thus chosen to represent all of its members, regardless of their union affiliations or want of them." *Steele v. Louisville & N.R. Co.*, 323 U.S. 192, 200 (1944); *see Bhd. of Ry. and Steamship Clerks v. Fla. E. Coast Ry. Co.*, 384 U.S. 238, 246 (1966) ("The union remains the bargaining representative of all the employees in the designated craft, whether union members or not."). Our Supreme Court has also held that, in a collective bargaining setting, "the [terms] 'union members' and 'employees,' as contemplated by the contracting parties, are one and the same." *Key v. George E. Breece Lumber Co.*, 45 N.M. 397, 402, 115 P.2d 622, 625 (1941). Other jurisdictions concur. *See, e.g.*, *Corzine v. Bhd. of Locomotive Eng'rs*, 147 F.3d 651, 652 (7th Cir. 1998); *Journeymen Pipe Fitters Local 392 v. N.L.R.B.*, 712 F.2d 225, 228 (6th Cir. 1983) (*per curiam*); *Queen Mary Rests. Corp. v. N.L.R.B.*, 560 F.2d 403, 409 (9th Cir. 1977); *Dillon v. Am. Brass Co.*, 60 A.2d 661, 663 (Conn. 1948); *Bouchard Transp. Co., Inc. v. Connors*, 811 So. 2d 787, 788-89 (Fla. Dist. Ct. App. 2002); *Gorham v. City of Kansas City*, 590 P.2d 1051, 1057 (Kan. 1979) ("A majority of the employees having voted in favor of representation, [a]ll are represented whether they be members of the employee organization or not, and whether or not they agree with all of the policies, acts, and contracts of the employee organization."); *Holley v. Painters Local Union No. 318*, 376 S.W.2d 44, 47 (Tex. App. 1964) ("Contractual provisions covering wages and conditions apply equally to all employees, whether union or nonunion.").

**{29}** Even the City's Labor Management Relations Ordinance states that "a CBA cover[s] all employees in the bargaining unit." City of Gallup, N.M., Labor Management Relations Ordinance ch. 12, § 1-12-12 (2008). The ordinance also requires a union to fairly represent "all employees in the bargaining unit without discrimination or regard to membership or nonmembership in the labor organization." *Id.* Finally, the City's ordinance requires all employees to abide by the contract and to follow "the required negotiated grievance procedure negotiated by the parties." Gallup, N.M., Ordinance § 1-12-17(A)(5).

9

**{30}** In the case before us, it is undisputed that Petitioner is a member of the bargaining unit that negotiated the CBA, including its valid arbitration clause, with the City. For decades, both New Mexico case law and federal labor jurisprudence have recognized that the terms and conditions of a CBA, including arbitration clauses, apply to all members of the bargaining unit. We therefore conclude that Petitioner is bound by the requirement of the CBA as well as the PEBA and that a grievance challenging the termination of employment is subject to binding arbitration.

**B.** **Petitioner's Right to Seek Redress in the Courts**

**{31}** "The right of access to the courts is one aspect of the right to petition the government for redress of grievances, as guaranteed by the First Amendment to the U.S. Constitution, and also is protected by the provisions protecting due process of law[.]" *Bd. of Educ. of Carlsbad Mun. Schs. v. Harrell*, 118 N.M. 470, 480, 882 P.2d 511, 521 (1994). Petitioner sought injunctive relief to avoid suffering "irreparable harm" if forced to arbitrate his grievance. We note that "[i]njunctions are harsh and drastic remedies which should issue only in extreme cases of pressing necessity and only where there is no adequate and complete remedy at law." *Hill v. Cmty. of Damien of Molokai*, 1996-NMSC-008, ¶ 51, 121 N.M. 353, 911 P.2d 861 (internal quotation marks and citation omitted). We look to see whether binding arbitration, subject to the appeals process, provides Petitioner with an adequate and complete remedy at law.

**{32}** Our Supreme Court has recently reaffirmed the notion that "the State has ratified, if not encouraged, arbitration as a form of dispute resolution." *Durham*, 2009-NMSC-007, ¶ 32. Foundational federal law supports that premise as well: "The present federal policy is to promote industrial stabilization through the [CBA]. A major factor in achieving industrial peace is the inclusion of a provision for arbitration of grievances in the [CBA]." *United Steelworkers*, 363 U.S. at 578.

**{33}** As noted above, New Mexico's PEBA requires all CBAs to provide for a grievance procedure that culminates in binding arbitration of disputes. Section 10-7E-17(F). That mandate comports with federal labor policy and jurisprudence and goes to the roots of the relationship between employers and their workforce. "Since arbitration of labor disputes has quite different functions from arbitration under an ordinary commercial agreement, the hostility evinced by courts toward arbitration of commercial agreements has no place here. For arbitration of labor disputes under [CBA]s is part and parcel of the collective bargaining process itself." *United Steelworkers*, 363 U.S. at 578.

**{34}** Petitioner's attempt to characterize himself as a non-union victim of the Union's duties to represent all members of the bargaining unit also falters under the weight of decades of federal labor policy. The United States Supreme Court has noted that the fact that labor unions "balance the economic interests of some employees against the needs of the larger work force as they negotiate [CBA]s and implement them . . . does not justify singling out an arbitration provision for disfavored treatment." *14 Penn Plaza LLC v. Pyett*, 556 U.S.

10

247, 270 (2009). "Congress sought to secure to all members of the unit the benefits of their collective strength and bargaining power, in full awareness that the superior strength of some individuals or groups might be subordinated to the interest of the majority." *Id*. at 270-71 (internal quotation marks and citation omitted); *see id.* at 271 (further noting that "the benefits of organized labor outweigh the sacrifice of individual liberty that this system necessarily demands"). Any claim that the union is denying a member of the collective bargaining unit his day in court, the Court concluded, "amounts to a collateral attack on the [National Labor Relations Act]." *Id*.

**{35}** Arbitration is not a deficient or substandard forum for resolving workplace disputes. The United States Supreme Court recently affirmed the idea that requiring arbitration of even statutory claims does not infringe upon an individual's right to seek redress in the courts. *See id*. at 249 ("[T]he decision to resolve ADEA claims by way of arbitration instead of litigation does not waive the statutory right to be free from workplace age discrimination; it waives only the right to seek relief from a court in the first instance.").

**{36}** Here, Petitioner is not without recourse in the courts; he retains the right to appeal any arbitration decision to the district court. Section 44-7A-29(a)(6). "The general rule is, however, that an individual employee must show that he has exhausted the grievance procedures provided by the agreement as a condition to his right to maintain an action in court." *Jones*, 72 N.M. at 326, 383 P.2d at 574. In the case before us, exhausting the grievance procedures would require submitting the dispute to binding arbitration.

**{37}** Our Supreme Court has long held that the appeals process suffices to serve as a check on lower courts, which are presumed to be fair and impartial. *See Bd. of Comm'rs of Guadalupe Cnty.*, 29 N.M. 244, 260, 223 P. 516, 520 ("There are other reasons why the alternative writ of prohibition was improvidently issued by us. There is another and an adequate remedy by appeal. . . . Courts are to be always presumed to act fairly and impartially, and to administer justice to all the people."). We presume that arbitration provides an adequate forum for Petitioner to have his claim adjudicated, subject to review by a district court acting in its appellate capacity. Our Supreme Court has stated: "There is a spirit of confidence and respect which should at all times be entertained between courts of superior and inferior jurisdiction. And that a question pending before an inferior court will be correctly decided should always be assumed by us." *Id*. at 261, 223 P. at 521. The United States Supreme Court agrees: "This presumption of arbitrability for labor disputes recognizes the greater *institutional competence of arbitrators* in interpreting [CBA]s, furthers the national labor policy of peaceful resolution of labor disputes[,] and thus best accords with the parties' presumed objectives in pursuing collective bargaining." *AT & T Techs., Inc.*, 475 U.S. at 650 (emphasis added) (internal quotation marks and citation omitted).

**{38}** We conclude that arbitration provides an adequate and complete forum and remedy at law for disputes governed by the CBA, including Petitioner's grievance for his termination from his position as a police officer for the City.

11

## VI.     Impact on a Potential Claim Under the Tort Claims Act

**{39}**     Finally, Petitioner points out that he has served notice to the City and GPD of a tort claim against them under the New Mexico Tort Claims Act (NMTCA), NMSA 1978, § 41-4-12 (1977).  He contends that the GPD is trying "to negotiate away" his "statutorily created individual right[]" of pursuing his claim under the NMTCA by blocking his access to district court.  He argues that the PEBA does not supersede the NMTCA and that he should be allowed to pursue that claim in court.

**{40}**     The potential tort claim pertains to Petitioner's arrest related to a domestic incident that occurred before his dismissal.  Petitioner did not mention a claim under the NMTCA in his petition to the district court.  The filing of notice of a claim under the NMTCA was mentioned in passing at the beginning of the December 20, 2011, hearing on the petition.

**{41}**     Petitioner's brief in chief fails to explain how the issue before us—whether he must arbitrate the dispute over his termination from the GPD—has any bearing on his right to pursue legal redress for an unrelated tort claim.  At no time was the potential tort claim considered by the district court as part of the petition for injunctive relief or at the hearing.  This issue was therefore not properly preserved for review.  *See Schuster v. State Dep't of Taxation & Revenue*, 2012-NMSC-025, ¶ 33, 283 P.3d 288 ("To preserve an argument for appellate review, it must appear that an appellant fairly invoked a ruling of the trial court on the same grounds argued in the appellate court." (internal quotation marks and citation omitted)); *Crutchfield v. N.M. Dep't of Taxation & Revenue*, 2005-NMCA-022, ¶ 14, 137 N.M. 26, 106 P.3d 1273 ("[O]n appeal, the party must specifically point out where, in the record, the party invoked the court's ruling on the issue.  Absent that citation to the record or any obvious preservation, we will not consider the issue.").  Because the district court did not have an opportunity to consider or rule on this issue, it is not properly before this Court.  *See Barron v. Evangelical Lutheran Good Samaritan Soc'y*, 2011-NMCA-094, ¶ 48, 150 N.M. 669, 265 P.3d 720.

## CONCLUSION

**{42}**     For the foregoing reasons, we affirm the ruling of the district court.

**IT IS SO ORDERED.**

                                    _____

                                          **M. MONICA ZAMORA, Judge**

**WE CONCUR:**

_____

**CYNTHIA A. FRY, Judge**

_____
**J. MILES HANISEE, Judge**

**Topic Index for** *Luginbuhl v. City of Gallup***, No. 31,910**

**APPEAL AND ERROR**
Standard of Review

**CIVIL PROCEDURE**
Arbitration

**CONTRACTS**
Consideration

**EMPLOYMENT LAW**
Collective Bargaining
Disciplinary Action
Employee Grievances
Labor Unions
Termination of Employment

**GOVERNMENT**
Municipalities
Officers
Ordinances
Public Employees

**JURISDICTION**
District Court

**REMEDIES**
Arbitration
Writ of Prohibition

**TORTS**
Tort Claims Act