This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-38804

**AMERICAN FEDERATION OF STATE, COUNTY, & MUNICIPAL EMPLOYEES, LOCAL 923,**

Petitioner-Appellee,

v.

**CITY OF ESPANOLA and ESPANOLA POLICE DEPARTMENT,**

Respondents-Appellants.

**APPEAL FROM THE DISTRICT COURT OF RIO ARRIBA COUNTY**
**Jason Lidyard, District Judge**

Youtz & Valdez, P.C.
Shane Youtz
Stephen Curtice
James Montalbano
Albuquerque, NM

for Appellee

Bingham, Hurst & Apodaca, P.C.
Wayne E. Bingham
Albuquerque, NM

for Appellants

### MEMORANDUM OPINION

**BOGARDUS, Judge.**

**{1}** The City of Espanola (City) appeals the district court's denial of its motion to dismiss and order granting the American Federation of State, County, and Municipal

Employees, Local 923's (Union) petition to compel arbitration.[1] The City argues enforcement of the arbitration agreement is governed by the Public Employee Bargaining Act (PEBA), NMSA 1978, §§ 10-7E-1 to -26 (2003, amended 2020),[2] and not the Uniform Arbitration Act (UAA), NMSA 1978, §§ 44-7A-1 to -32 (2001). We affirm.

**DISCUSSION**

**{2}** The City contends that the district court erred by denying its motion to dismiss because the PEBA controls over the UAA, primary jurisdiction lies within the state Public Employee Labor Relations Board (the Board), and the proper avenue to seek relief for a violation of the collective bargaining agreement (the CBA) between the City and the Union was to file a prohibited practice complaint under Section 10-7E-19(H) of the PEBA.

**{3}** The issues in this appeal involve interpretation of the PEBA and the UAA. "We review questions of statutory construction de novo." *State v. Smith*, 2004-NMSC-032, ¶ 8, 136 N.M. 372, 98 P.3d 1022. Generally, "[i]n construing the language of a statute, our goal and guiding principle is to give effect to the intent of the Legislature." *Grisham v. Romero*, 2021-NMSC-009, ¶ 23, 483 P.3d 545. "In determining legislative intent, we look to the plain language of the statute and the context in which it was enacted, taking into account its history and background." *Pirtle v. Legis. Council Comm.*, 2021-NMSC-026, ¶ 14, 492 P.3d 586. Moreover, "[w]e consider all parts of the statute together, reading the statute in its entirety and construing each part in connection with every other part to produce a harmonious whole." *Dep't of Game & Fish v. Rawlings*, 2019-NMCA-018, ¶ 6, 436 P.3d 741 (alterations, internal quotation marks, and citation omitted). Applying these principles of statutory construction, we conclude the Union was not required to file a prohibited practice complaint under the PEBA and the district court properly denied the City's motion to dismiss.

**{4}** We start by reviewing both the UAA and the PEBA. The UAA "governs an agreement to arbitrate." Section 44-7A-3(a). Under this statute, "[a]n agreement contained in a record to submit to arbitration any existing or subsequent controversy arising between the parties to the agreement is valid, enforceable and irrevocable except upon a ground that exists at law or in equity for the revocation of a contract." Section 44-7A-7(a). The question of whether parties agreed to arbitrate is decided by a district court, which shall "issue an order accordingly." *Hunt v. Rio at Rust Ctr., LLC*, 2021-NMCA-043, ¶ 13, 495 P.3d 634; *see* §§ 44-7A-7, -8. Arbitration is a "highly favored" form of dispute resolution, *Luginbuhl v. City of Gallup*, 2013-NMCA-053, ¶ 21, 302 P.3d 751 (internal quotation marks and citation omitted), because it promotes judicial efficiency and conservation of the parties' resources. *Santa Fe Tech., Inc. v. Argus Networks, Inc.*, 2002-NMCA-030, ¶ 51, 131 N.M. 772, 42 P.3d 1221. "New Mexico has a strong public policy in favor of arbitration as a form of dispute resolution." *Luginbuhl*, 2013-NMCA-053, ¶ 21 (internal quotation marks and citation omitted).

---

1Because this is a memorandum opinion and the parties are familiar with the facts and procedural history of this case, we reserve discussion of specific facts where necessary to our analysis.
2All references to Sections 10-7E-1 to -26 in this opinion are to the 2003 version of the PEBA.

"Parties contracting to resolve disputes by arbitration are bound by their agreement." *Id.* (internal quotation marks and citation omitted).

**{5}** The purpose of the PEBA is to "guarantee public employees the right to organize and bargain collectively with their employers, to promote harmonious and cooperative relationships between public employers and public employees[.]" Section 10-7E-2. The PEBA provides that a public employer shall not "refuse or fail to comply with a collective bargaining agreement[,]" § 10-7E-19(H), and creates the Board that "has the power to enforce provisions of the [PEBA] through the imposition of appropriate administrative remedies." Sections 10-7E-9(F), -8(A).[3]

**{6}** The City first argues that the PEBA was a comprehensive revision of the law regarding unionized public employees and public employers such that it supersedes the UAA. In support of its argument, the City relies on *Landau v. New Mexico Attorney General*, 2019-NMCA-041, 446 P.3d 1229.

**{7}** In *Landau*, this Court construed a conflict in the Personnel Act, NMSA 1978, §§ 10-9-1 to -25 (1961, as amended through 2014) and NMSA 1978, Section 8-5-5 (1988), to determine whether the appellants fired by the newly elected attorney general, were "classified" employees entitled to protections under the Personnel Act or "exempt" employees not subject to those protections. *Landau*, 2019-NMCA-041, ¶ 5. Section 8-5-5 was originally enacted to create the Department of Justice, and was amended to provide for appointment of employees "who shall hold office during the pleasure of the attorney general" making them "exempt." *Landau*, 2019-NMCA-041, ¶ 6. The relevant Personnel Act was enacted in 1961. *Id.* ¶ 8. The Personnel Act defined as "classified" most individuals employed by an elected official. No language in either statute resolved the conflict or addressed which statute should be applied in the event of such a conflict. *Id.* ¶¶ 5, 8. After a thorough examination of both statutes' legislative histories, including historical amendments, this Court determined that the Legislature enacted the Personnel Act as a comprehensive revision of the state's public employment system. *Id.* ¶ 13. This Court applied the rule of statutory construction set forth in NMSA 1978, Section 12-2A-10(D) (1997): "If a rule is a comprehensive revision of the rules on the subject, it prevails over previous rules on the subject, whether or not the revision and the previous rules conflict irreconcilably." *Landau*, 2019-NMCA-041, ¶ 4.

**{8}** Our holding in *Landau* was based on several factors. We based our conclusion on the intent of the Personnel Act, 2019-NMCA-041, ¶ 13, the Personnel Act's plain language, *id.* ¶ 14, the Legislature's failure to respond to attorney general opinions regarding their interpretation of the enactment of the state Personnel Act that stated, "the [a]ttorney [g]eneral's employees were no longer exempt from the coverage of the Personnel Act[,]" *id.* ¶¶ 15-16, provisions of the Personnel Act that provided automatic coverage to employees who had served out a probationary period, *id.* ¶ 17, and a later

---

[3]A public employer other than the State may create a local board that "shall assume the duties and responsibilities of the public employee labor relations board." Section 10-7E-10(A). However, no such local board was available for the parties in this case.

enacted amendment that exempted certain members of the Office of the Attorney General from the Personnel Act. *Id.* ¶ 18.

**{9}** The indications of legislative intent in this case differ significantly from those described in *Landau*. The purpose of the PEBA, to "guarantee public employees the right to organize and bargain collectively with their employers, to promote harmonious and cooperative relationships between public employers and public employees," § 10-7E-2, is not impeded by allowing public employers and public employees to arbitrate per the agreements set out in their collective bargaining agreements and to enforce those arbitration provisions per the UAA. The plain language of the PEBA includes no language prohibiting parties from arbitrating per such agreements, and the City points to no legislative history that demonstrates legislative intent for us to conclude that the only or primary way to address breaches of collective bargaining agreements is under the PEBA.

**{10}** Finally, in *Landau*, this Court could not construe the statutes to give effect to each, because this Court was presented with an issue that required it to determine whether the employees in question were "exempt[,]" pursuant to Section 8-5-5, or "classified[,]" pursuant to the Personnel Act. *Landau*, 2019-NMCA-041, ¶ 2 (internal quotation marks omitted). Because the employees could only be one or the other, this Court could not construe the two statutes harmoniously. In this case, we can construe the statutes in harmony to allow the parties to seek a remedy for violations of the CBA under the UAA or the PEBA. *See* § 12-2A-10(A) ("If statutes appear to conflict, they must be construed, if possible, to give effect to each.").

**{11}** Here, the City cites no authority to support its view that the PEBA is a comprehensive revision of the law, except to cite the statute's conflicts provision and cite the purpose of the PEBA to "guarantee public employees the right to organize and bargain collectively with their employers." Section 10-7E-2. We see nothing in the language of these sections to support the City's position. First, the conflicts provision in the PEBA merely addresses "conflict[s] with other laws," § 10-7E-3, and neither states nor infers that the PEBA is a revision of an entire area of law. Next, while we agree the City accurately describes PEBA's purpose as set out in the statute, the statute's purpose does not necessarily support the City's claim that the PEBA is a comprehensive revision of disputes between certain public employers and public employees such that it supersedes the UAA.

**{12}** The City's claim is also difficult to reconcile with the statute's language because the PEBA references and incorporates the UAA multiple times. For instance, Section 10-7E-17(F) requires collective bargaining agreements between public employers and public employees to contain a grievance procedure to settle disputes relating to personnel manners that provides a final and binding determination that constitutes an arbitration award "within the meaning of the [UAA]."[4]

---

4As described later in this opinion, the PEBA also incorporates the UAA in Section 10-7E-18, and regulations regarding the PEBA incorporate the UAA in 11.21.3.22 NMAC (2/28/05).

**{13}** The City claims that this inconsistency can be resolved by construing Section 10-7E-17(F) to apply when parties voluntarily proceed to arbitration, while the PEBA controls when a party refuses to comply with arbitration procedures as set out in collective bargaining agreements. But there is simply no support for the City's argument within the text of the PEBA. No such language was included, and we decline to read such language into the PEBA. *See Rio Grande Chapter of Sierra Club v. N.M. Mining Comm'n*, 2003-NMSC-005, ¶¶ 24-26, 133 N.M. 97, 61 P.3d 806 (declining to read language into a statute silent as to a particular issue).

**{14}** Because the City has not offered more in support of its argument, we decline to adopt the City's contention. "[I]t is the appellant's burden to demonstrate, by providing well-supported and clear arguments, that the district court has erred." *Premier Tr. of Nev., Inc. v. City of Albuquerque*, 2021-NMCA-004, ¶ 10, 482 P.3d 1261. We conclude, after thorough and careful review of the briefing and the authorities cited therein, that the City has not demonstrated that PEBA was a comprehensive revision of the law regarding unionized public employees and public employers such that it supersedes the UAA in this case. *See Farmers, Inc., v. Dal Mach. & Fabricating, Inc.*, 1990-NMSC-100, ¶ 8, 111 N.M. 6, 800 P.2d 1063 ("The presumption upon review favors the correctness of the [district] court's actions. Appellant must affirmatively demonstrate its assertion of error."). Thus, in this case, we read the UAA and the PEBA harmoniously to give effect to both.

**{15}** Defendant next argues that because the PEBA contains a conflicts clause that specifically states that "the provisions of the [PEBA] shall supersede other previously enacted legislation and regulations; provided that the [PEBA] shall not supersede the provisions of the Bateman Act, the Personnel Act, Sections 10-7-1 through 10-7-19 . . . , the Group Benefits Act, the Per Diem and Mileage Act, the Retiree Health Care Act, public employee retirement laws or the Tort Claims Act[,]" § 10-7E-3 (internal citations omitted), the Union was required to file a prohibited practice complaint in front of the Board in response to a violation of the CBA. We disagree.

**{16}** The City seems to contend that the existence of the conflicts clause establishes that the UAA and the PEBA are irreconcilable. The City presents no explanation why the conflicts clause creates a conflict between the two statutes and we cannot discern one from the language of the clause. The conflicts clause only applies "in the event of a conflict with other laws." Section 10-7E-3. While the PEBA does provide an avenue for relief based on a violation of a collective bargaining agreement, the statute does not state that it is the *only* avenue or even the primary avenue for such relief.

**{17}** As previously noted, the PEBA refers to and incorporates the UAA in Section 10-7E-17(F). It also references the UAA in Section 10-7E-18. This section states that when negotiations between public employers and the exclusive representatives of public employees reach an impasse, the parties may resolve their conflict by selecting an arbitrator whose "decision shall be subject to judicial review pursuant to the standard set forth in the [UAA]." Section 10-7E-18(A)(5). Further, the regulations pertaining to the PEBA contain an "arbitration deferral" section that permits the Board's deferral of a

prohibited practice complaint that would require interpreting a collective bargaining agreement until the collective bargaining agreement's "grievance procedure has been exhausted and an arbitrator's award has been issued." 11.21.3.22(A) NMAC (2/28/05).

**{18}** The PEBA's references to the UAA and its regulatory arbitration deferral—particularly in light of the City's failure to explain why multiple avenues of relief constitute a conflict—indicate more than one avenue of relief exists for a violation of a collective bargaining agreement. If multiple avenues of relief exist, there can be no conflict between the PEBA and the UAA such that a violation of a collective bargaining agreement would be required to be adjudicated under the PEBA. While it is true that the Union had the right to file a complaint with the Board, it also had the right to file a motion to compel under the UAA. Under the "Irreconcilable statutes or rules" statute, § 12-2A-10(A), "[i]f statutes appear to conflict, they must be construed, if possible, to give effect to each." Thus, even though there are two avenues of relief, we can give effect to both statutes by allowing public employees to arbitrate as they agree per the UAA or by filing a prohibited practice complaint.

**{19}** Finally, the City argues the Board has primary jurisdiction of disputes between public employees, through their union, and a public employer who have entered into a collective bargaining agreement containing an arbitration provision. The City has provided no authority for this proposition, and after our own review, we find nothing in the PEBA that grants "primary jurisdiction" to the Board. As referenced above, the PEBA incorporates the UAA as do the PEBA's regulations. Sections 10-7E-17(F), -18; 11.21.3.22 NMAC (2/28/05). Not one of these references to the UAA suggest the PEBA is a primary avenue of relief for public employers or public employees. Without offering any authority for its claim, we will not review the City's contention further. *See In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329 (explaining we will not review issues unsupported by citation to authority).

**CONCLUSION**

**{20}** For the foregoing reasons, we affirm the district court's decision to deny the City's motion to dismiss, and the order to compel arbitration.

**{21}   IT IS SO ORDERED.**

**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**

**SHAMMARA H. HENDERSON, Judge**

**JANE B. YOHALEM, Judge**